In the Matter of the Claim of SHIRLEY GOLDBERG, against 954 MARCY CORPORATION et al., Appellants.

STATE INDUSTRIAL BOARD, Respondent.

Argued November 17, 1937; decided January 11, 1938.

*James J. Mahoney, George J. Stacy* and *William S. Sinclair* for appellants. The condition of blotches which plaintiff testified were on her legs and weakened them and caused her to fall did not constitute an occupational disease. (*Matter of Bishop* v. *Comer & Pollock, Inc.*, 251 App. Div. 492; *Matter of Lerner* v. *Rump Bros.*, 241 N. Y. 153; *Matter of Lurye* v. *Stern Bros. Dept. Store*, 275 N. Y. 182; *Matter of Doulin* v. *City of Saratoga*, 261 N. Y. 558; *Matter of Nielsen* v. *Firemen's Fund Indemnity Co.*, 239 App. Div. 239; *Matter of Andrews* v. *L. & S. Amusement Corp.*, 253 N. Y. 97.)

*Frank C. Laughlin, Arthur Butler Graham, P. Tecumseh Sherman, Hervey J. Drake, Joseph W. Kirkpatrick* and *Stewart W. Bowers* for Association of Casualty and Surety Executives, *amicus curiæ*. In so far as it is predicated on the theory of an occupational disease the award should be reversed because the claimant did not have an occupational disease within the fair intent and meaning of the statute (Workmen's Compensation Law, Cons. Laws, ch. 67). (*Matter of Aylesworth* v. *Phœnix Cheese Co.*, 170 App. Div. 34; *Matter of Stoerze* v. *City of New York*, 267 N. Y. 339; *Matter of Wilson* v. *Dorflinger & Sons*, 218 N. Y. 84; *Pardy* v. *Boomhower Grocery Co.*, 178 App. Div. 347; *Balcom* v. *Ellintuch & Yarfitz*, 179 App. Div. 548; *Matter of Sickles* v. *Ballston R. S. Co.*, 171 App. Div. 108; *Madeo* v. *Dibner & Bro., Inc.*, 186 Atl. Rep. 616; *Matter of Connelly* v. *Hunt*

*Furniture Co.*, 240 N. Y. 83; *Matter of Nielsen* v. *Firemen's Fund Indemnity Co.*, 239 App. Div. 239.) The statute plainly contemplates that the occupational disease must result from the process followed by the employee in the performance of his duties, namely, his actual physical contact in the performance of his duties with something which causes the occupational disease, and the process referred to does not extend to or include the place in which the employee is required to work. (*Dille* v. *Plainview Coal Co.*, 217 Iowa, 827; *Madeo* v. *Dibner & Bro., Inc.*, 121 Conn. 664; *Gentry* v. *Swann Chemical Co.*, 174 So. Rep. 530; *Matter of Nielsen* v. *Firemen's Fund Indemnity Co.*, 239 App. Div. 239; *Ramsay* v. *Sullivan Mining Co.*, 61 Idaho, 36; *Glodenis* v. *American Brass Co.*, 118 Conn. 29; *Matter of Lerner* v. *Rump Bros.*, 241 N. Y. 153; *Barrencotto* v. *Cocker Saw Co.*, 266 N. Y. 139; *Wager* v. *White Star Candy Co.*, 217 App. Div. 316; *Trout* v. *Wickwire Spencer Steel Corp.*, 195 N. Y. Supp. 528; *Industrial Commission* v. *Roth*, 98 Ohio St. 34; *McNeely* v. *Carolina Asbestos Co.*, 206 N. C. 568; *Victory Sparkler & Specialty Co.* v. *Francks*, 147 Md. 368; *Seattle Can Co.* v. *Department of Industries*, 147 Wash. 303.)

*John J. Bennett, Jr., Attorney-General* (*Leon Freedman* and *Joseph A. McLaughlin* of counsel), for respondent. The injuries sustained by the claimant were accidental injuries. (*Matter of Unger* v. *New York Sportswear Co.*, 243 App. Div. 659; 268 N. Y. 651; *Matter of Andrews* v. *Emporium Forestry Co.*, 224 App. Div. 327; *Matter of Pickerell* v. *Schumacher*, 242 N. Y. 577; *Armstrong* v. *American Red Cross*, 202 App. Div. 766; *Matter of Blass* v. *Long Island Motor Parkway, Inc.*, 222 App. Div. 706; *Matter of Chudomel* v. *Weber, Bunke, Lange Coal Co.*, 221 App. Div. 824; *Matter of Kennedy* v. *Cuddihy*, 225 App. Div. 713; *Matter of Cleveland* v. *Rice*, 239 N. Y. 530; *Matter of Hughes* v. *St. Patrick's Cathedral*, 245 N. Y. 201; *Matter of Madura* v. *City of New York*, 238 N. Y. 214; *Matter of Katz* v. *Kadans & Co.*, 232 N. Y.

420.) The accident arose out of and in the course of the employment. (*Matter of Younger* v. *Motor Cab Transportation Co.*, 260 N. Y. 396; *Matter of Kenney* v. *Lord & Taylor, Inc.*, 254 N. Y. 532; *Roos* v. *Loft, Inc.*, 247 App. Div. 842; *Matter of Clapham* v. *David*, 232 App. Div. 458; *Springer* v. *North*, 205 App. Div. 754; *Carroll* v. *Stokes*, 238 App. Div. 886; *Matter of Monaco* v. *Kesselman's Baby Stores, Inc.*, 240 App. Div. 930; *Allen* v. *Richfield Oil Corp.*, 237 App. Div. 861.) The disability of the claimant was the result of an occupational disease covered by the Workmen's Compensation Law. (*Matter of Bishop* v. *Comer & Pollock, Inc.*, 251 App. Div. 492; *Barrencotto* v. *Cocker Saw Co.*, 266 N. Y. 139.)

FINCH, J. This is a workmen's compensation case. The Industrial Board made an award which has been affirmed by the Appellate Division, one justice dissenting.

The claimant was a cashier in a moving picture theatre. Her work involved selling tickets in a ticket booth in the street outside the lobby of the theatre. This booth was heated by an electric heater which the claimant could turn on and off as she wished. Her claim is that the alternate heat and cold caused blotches to appear on her limbs and caused her feet to become numb and weak. She complained about this condition to her employer, and he sent her to a physician. While on the way to the physician's office she claims that, due to the weakness of her feet, she fell, sustaining a fracture of her left ankle.

The Industrial Board found " the injuries sustained by said Shirley Goldberg were accidental injuries and arose out of and in the course of her employment," and made an additional finding that " the disease from which the said Shirley Goldberg was suffering was an occupational disease and was contracted by her within twelve months previous to the date of her disablement, and was due to the nature of her employment and was characteristic of and peculiar to the employment in which she was engaged."

The question presented is whether the award may be sustained upon the ground of an accidental injury arising out of and in the course of her employment or upon the ground that it resulted from an occupational disease.

We take up first whether the award may be sustained upon the finding of occupational disease. This necessitates a consideration of the Workmen's Compensation Law (Cons. Laws, ch. 67) and its recent amendments. The original purpose of the law was to provide an insurance system to compensate employees for accidental injuries sustained in the course of hazardous employment. Included as accidents were certain occupational diseases which were specifically named. Section 3, subdivision 2, of the act provides that compensation may be had " for disabilities sustained or death incurred by an employee resulting from the following occupational diseases." This is followed by two parallel columns, one headed " Description of Diseases," and the other, " Description of Process." In the first column the disease is named or described, and in the second column, the process in which it must be contracted in order to make it compensable. Concededly the claimant does not come within the provisions of any of these twenty-seven paragraphs. In 1935, however, a twenty-eighth paragraph was added. (Laws of 1935, ch. 254.) In the first column it reads " any and all occupational diseases; " in the second column, the process is described as " any and all employments enumerated in subdivision one of section three of this chapter." The subdivision referred to lists all the hazardous employments to which the Workmen's Compensation Law is applicable.

The contention is made that this paragraph 28 extends the Workmen's Compensation Law so as to make it applicable to any disease arising out of and in the course of the employment, just as it is applicable to any accident arising out of and in the course of employment. This in substance would make workmen's compensation the equivalent of life and health insurance.

The question is, to what diseases did the Legislature intend to apply workmen's compensation insurance when it added paragraph 28 to subdivision 2 of section 3.

The very wording of subdivision 2 and of paragraph 28 shows that they were not intended to apply to all diseases contracted during the course of the employment, since both are limited to " *occupational diseases.*" Moreover the twenty-seven paragraphs which precede paragraph 28 specifically list diseases which are peculiar to specific occupations; therefore, the principle of *ejusdem generis* applies and paragraph 28 should be limited in a similar manner. Manifestly, it was not the intention of the Legislature to change the Workmen's Compensation Law from a statute affording protection to employees against the hazards of their occupation to a law insuring against diseases which might happen to be contracted while the employee was engaged in his occupation.

The questions which remain are what diseases arising out of the employment are occupational diseases and whether the claimant was afflicted by such a disease.

The Workmen's Compensation Law has not attempted to define diseases known as occupational diseases, but it has shown perhaps more clearly than by definition what is meant, by enumerating certain diseases in the first twenty-seven paragrahs in section 3, subdivision 2. Each disease is linked with the process used by the employee by which the disease is caused, such as lead poisoning contracted in a process involving the use of or direct contact with lead. Every such disease is thereby required to be actually caused in the course of the employment and from the particular work the employee is performing. Certain sections of the statute refer to occupational diseases as those due to the nature of the employment and contracted therein, and expressly limit compensation to those diseases. (§§ 39, 40.) Thus an occupational disease is one which results from the nature of the employment, and by nature is meant, not those

conditions brought about by the failure of the employer to furnish a safe place to work, but conditions to which all employees of a class are subject, and which produce the disease as a natural incident of a particular occupation, and attach to that occupation a hazard which distinguishes it from the usual run of occupations and is in excess of the hazard attending employment in general. Thus compensation is restricted to disease resulting from the ordinary and generally recognized risks incident to a particular employment, and usually from working therein over a somewhat extended period. Such disease is not the equivalent of a disease resulting from the general risks and hazards common to every individual regardless of the employment in which he is engaged.

We have referred to an occupational disease as " * * * the natural and unavoidable result of the conditions of the employment." (*Barrencotto* v. *Cocker Saw Co.*, 266 N. Y. 139, 143; *Matter of Lerner* v. *Rump Bros.*, 241 N. Y. 153, 155.)

Definitions of occupational disease similar to those above have been enunciated by courts of other States in construing like statutes. (*Madeo* v. *Dibner & Bro., Inc.*, 121 Conn. 664; *Dille* v. *Plainview Coal Co.*, 217 Iowa, 827; *Victory Sparkler & Specialty Co.* v. *Francks*, 147 Md. 368; *Lovell* v. *William Bros., Inc.*, 50 S. W. Rep. [2d] [Mo. App.] 710; *McNeely* v. *Carolina Asbestos Co.*, 206 N. C. 568; *Industrial Comm.* v. *Roth*, 98 Ohio St. 34; *Seattle Can Co.* v. *Dept. of Labor Industries*, 147 Wash. 303.)

With this distinction in mind, we search the record to find if there is any evidence to show that the plaintiff was suffering from an occupational disease. Her occupation was that of handling cash and theatre tickets and it is obvious that this work in and of itself could not have caused the leg injury or disease. The " disease " which befell her, therefore, was caused not by the nature of her employment, but by the failure of her employer to furnish her with a proper and safe place in which to work.

There being no evidence whatsoever to sustain the finding that the claimant contracted an occupational disease in the course of her employment, the award cannot be sustained on that ground.

The award, however, can be sustained on the ground of accidental injury arising out of and in the course of her employment. The fall occurred while the claimant, pursuant to the directions of her employer, was on her way to the doctor. It is urged that an injury resulting from such a fall is not compensable, and we are referred to our ruling in *Matter of Andrews* v. *L. & S. Amusement Corp.* (253 N. Y. 97). In that case the claimant's injuries were the result of a fall, but the fall was caused by an epileptic fit which had nothing to do with the employment. In the case at bar the fall of the claimant was the result of weakness of her feet which was caused not by an internal disorder, disease or illness having no connection with her employment, but by the conditions of her employment. More analogous to the case at bar are *Matter of Unger* v. *N. Y. Sportwear Co.* (268 N. Y. 651) and *Matter of Pickerell* v. *Schumacher* (242 N. Y. 577), in which cases we affirmed awards granted to claimants who fell while on the street but in the course of their employment. There was evidence from which the Industrial Board was justified in finding that the claimant suffered accidental injuries arising out of and in the course of her employment. (*Matter of Younger* v. *Motor Cab Trans. Co.*, 260 N. Y. 396.)

The order should be affirmed, with costs.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and RIPPEY, JJ., concur.

Order affirmed.