Argued October 21, 1948; decided November 24, 1948.

*Albert P. Thill* and *John P. Smith* for appellants.   Claimant failed to establish an occupational disease within the Workmen's Compensation Law.   (*Goldberg* v. *954 Marcy Corp.*, 276 N. Y. 313; *Matter of Nielsen* v. *Fireman's Fund Ind. Co.*, 239 App. Div. 239.)

*Nathaniel L. Goldstein, Attorney-General* (*Roy Wiedersum* and *Daniel Polansky* of counsel), for Workmen's Compensation Board, respondent.   The disability of claimant was due to an occupational disease.   (*Goldberg* v. *954 Marcy Corp.*, 276 N. Y. 313; *Matter of Leonbruno* v. *Champlain Silk Mills*, 229 N. Y. 470; *Matter of Mason* v. *Y. W. C. A. of City of New York*, 271 App. Div. 1042, 297 N. Y. 1037; *Matter of Peloso* v. *D'Alessio Bros.*, 272 App. Div. 984, 298 N. Y. 582; *Matter of Gaites* v. *Society for Prevention of Cruelty to Children*, 277 N. Y. 534; *Matter of Wakefield* v. *World-Telegram*, 274 N. Y. 517; *Matter of Levy* v. *World-Telegram Corp.*, 285 N. Y. 533; *Matter of Charbazian* v. *Regina Novelty Corp.*, 257 App. Div. 1097; *Matter of Wickham* v. *Glenside Woolen Mills*, 252 N. Y. 11; *Matter of Hughes* v. *Trustees of St. Patrick's Cathedral*, 245 N. Y. 201; *Matter of Lepow* v. *Lepow Knitting Mills, Inc.*, 288 N. Y. 377.)

FULD, J. James Harman was one of two hundred employees working in the clean and well-ventilated tool and rig shop of the Republic Aviation Corporation. As foreman's assistant, he was required to read blueprints, lay out work, and, in general, keep the men supplied with tasks and examine and check what they did. His duties brought him in fairly close contact with all of the men and with Rodney Humphrey in particular. Those two, doing substantially the same sort of work, had benches but a few feet apart, conferred constantly on jobs that "would tie in together," shared tools, and, with everybody else, talked over the same telephone, on some days as often as five times, on others, not at all. In 1942, following a siege of pneumonia, Humphrey developed active pulmonary tuberculosis and shortly thereafter claimant also fell ill with it and suffered a disability. The Workmen's Compensation Board, having found that claimant contracted the disease from Humphrey, concluded that it was occupational and made an award in his favor. That determination has been affirmed by a divided Appellate Division.

The evidence is ample to support the conclusion that claimant contracted the disease from Humphrey in the course of his employment. Accordingly, we need but consider the question whether a communicable disease — which the board acknowledges would include measles or even a common cold — contracted from a fellow employee, is to be deemed an "occupational disease" and compensable under the Workmen's Compensation Law. That question must be answered in the negative, the determination reversed. A contrary decision, approval of the award, would transform workmen's compensation into life and health insurance. Socially desirable and appealing as such a course may be, it is one to be initiated not by the courts but by the legislature.

When the legislature, in 1920 (L. 1920, ch. 538), added article 2-A to the Workmen's Compensation Law, it granted coverage only for "occupational diseases," not, as it might have, for *communicable diseases* or for *any and all diseases arising out of and in the course of employment*. Clearly, the legislature did not make compensation benefits for diseases as inclusive or as broad as those for accidental injuries. Thus, if a workman suffers an

injury, he has but to show, to qualify for an award, that his injury arose " out of and in the course of employment " (§ 2, subd. 7). If, however, an employee is disabled by disease, he must go further and prove that his disablement was the result of an " occupational " disease (§ 3, subd. 2). We draw from this the obvious conclusion that the legislators envisaged and intended a coverage for diseases less comprehensive, less inclusive, than the coverage for injuries.

The statute itself furnishes additional confirmation. The provision entitled " occupational diseases " lists twenty-seven types of diseases in one column and, opposite each, an industrial process or activity of which the disease is commonly a by-product (§ 3, subd. 2). Such a listing, such a compilation, of the diseases and of the industrial operations likely to induce them, demonstrates that the Workmen's Compensation Law was not designed to cover all diseases suffered by an employee in the course of his work.

As the statute reads, then, the disease is not covered unless it is " occupational ", and the word " occupational ", subjected to careful consideration, has taken on well-defined meaning. An ailment does not become an occupational disease simply because it is contracted on the employer's premises. It must be one which is commonly regarded as natural to, inhering in, an incident and concomitant of, the work in question. There must be a recognizable link between the disease and some distinctive feature of the claimant's job, common to all jobs of that sort. As this court observed in *Matter of Goldberg* v. *954 Marcy Corp.* (276 N. Y. 313, 318–319), an occupational disease is one " which results from the nature of the employment, and by nature is meant * * * conditions to which all employees of a class are subject, and which produce the disease as a natural incident of a particular occupation, and attach to that occupation a hazard which distinguishes it from the usual run of occupations and is in excess of the hazard attending employment in general." In similar fashion, the courts of other States have insisted that the disease is not to be deemed occupational if the illness results from unexpected and unforeseen conditions of a job which, by its nature, is no more likely to cause the disease than any other kind of employment. (See, e.g., *Madeo* v. *Dibner & Brother,* 121 Conn. 664, 667; see, also, *Grain Handling Co.* v. *Sweeney,* 102 F. 2d 464; *Sullivan Mining Co.* v.

*Aschenbach,* 33 F. 2d 1; *Industrial Comm. of Ohio* v. *Roth,* 98 Ohio St. 34; *Seattle Can Co.* v. *Department of Labor & Industries,* 147 Wash. 303.) In short — to borrow from a typical opinion — to be occupational the disease must be one " due wholly to causes and conditions which are normal and constantly present and characteristic of the particular occupation; that is, those things which science and industry have not yet learned how to eliminate. Every worker in every plant of the same industry is alike constantly exposed to the danger of contracting a particular occupational disease." (*Seattle Can Co.* v. *Department of Labor & Industries, supra,* at p. 309.)

Quite obviously, claimant's ailment is not an occupational disease within the accepted definitions. In no sense can it be said that tuberculosis was " the natural and unavoidable result of the conditions of the employment " in which he was engaged. (*Cf. Barrencotto* v. *Cocker Saw Co.,* 266 N. Y. 139, 143; see, also, *Matter of Lerner* v. *Rump Bros.,* 241 N. Y. 153, 155.) Claimant's case — contracting tuberculosis in a well-aired factory — is not at all similar to that of a diver who contracts bends, a miner stricken with silicosis, a hospital nurse infected by some communicable disease (see *Matter of Hessinger* v. *City of New York,* 264 App. Div. 802, leave to appeal denied 289 N. Y. 853; *Matter of Shepardson* v. *Roosevelt Hosp.,* 271 App. Div. 760; *Matter of Yearich* v. *Roosevelt Hosp.,* 264 App. Div. 961, leave to appeal denied 289 N. Y. 854; *Matter of Vanore* v. *Mary Immaculate Hosp.,* 285 N. Y. 631), or that of a telephone operator disabled from tuberculosis as a result of using the same telephone as an ill fellow telephone operator. (*Matter of Mason* v. *Y. W. C. A. of City of New York,* 271 App. Div. 1042, leave to appeal denied 297 N. Y. 1037.) The last cited case, upon which the Appellate Division and the Workmen's Compensation Board place chief reliance, presents differences most clear. We need but note that in that case the conditions to which the employee Mason was subject — continuous mouth, nose and throat contact with a close-fitting, cup-shaped, potentially germ-infested mouthpiece — were the conditions to which all telephone operators as a class were subject; those conditions constitute a hazard peculiarly a feature of such work.

Reference to the facts of two cases suffice to illumine the distinction between diseases occupational and those which are

not. In the *Goldberg* case (276 N. Y. 313, *supra*), a cashier, employed to sell tickets in an outside theatre booth where an electric heater occasioned sharp temperature changes, contracted a disease which disfigured her legs and numbed and weakened her feet. Rejecting her claim that she was suffering an occupational disease, this court pointed out that there was no connection between her sickness and the nature of work performed: "Her occupation was that of handling cash and theatre tickets and it is obvious that this work in and of itself could not have caused the leg injury or disease. The 'disease' which befell her, therefore, was caused not by the nature of her employment, but by the failure of her employer to furnish her with a proper and safe place in which to work." (276 N. Y., at p. 319.) And in *Madeo* v. *Dibner & Brother* (121 Conn. 664, *supra*) — which this court cited with approval in the *Goldberg* case — a disease brought on by the unsanitary condition of the employer's premises, was held, for similar reasons, not to be occupational.

So in the case before us. The hazard that rendered claimant subject to the disease was Humphrey and not any condition that inhered in the nature of the employment itself. Any one, whether supervisor, laborer, factory hand or clerical worker, in any field of work, in any occupation or employment, whether factory, store or office, may contract tuberculosis, given a fellow worker already ill with that disease. No peculiarity of claimant's job induced the disease or heightened the chance of infection; workers in other occupations, carried on under similar conditions, would have been just as likely as claimant to fall victim to the ailment if a Humphrey were about. As thus becomes evident, claimant's disease resulted not from the ordinary and generally recognized hazards incident to a particular employment, but rather from the general risks common to every individual regardless of the employment in which he is engaged. (See *Matter of Goldberg* v. *954 Marcy Corp., supra.*)

The order of the Appellate Division should be reversed, with costs in this court and in the Appellate Division against the Workmen's Compensation Board, and the claim dismissed.

LOUGHRAN, Ch. J.; LEWIS, CONWAY, DESMOND and DYE, JJ., concur.

Order reversed, etc.