In the Matter of the Claim of ALBERT GRIFFIN, Respondent, against GRIFFIN & WEBSTER, INC., et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, December 22, 1953.

*Noel S. Symons* for appellants.

*Nathaniel L. Goldstein, Attorney-General (Roy Wiedersum* and *Daniel Polansky* of counsel), for Workmen's Compensation Board, respondent.

*Kirkpatrick & Tiernan* for claimant-respondent.

BERGAN, J. The question is presented in pointed form by this case whether a man who has a nonoccupational illness aggravated by his employment suffers, in that aggravation, an '' occupational disease '' within the scope of subdivision 2 of section 3 of the Workmen's Compensation Law. It can often be found readily enough, as it has been found here, that the aggravation and consequent disability are brought home directly to the work. It cannot always so readily be found, as some of the leading New York cases seem to require, that such an aggravation would be a common, expected, and inherent result of the work.

Looked at in another way the problem is whether a man who brings to his work a special kind of proneness to a disability quite different from the ordinary run of men who do the work suffers from an '' occupational '' disease if the work adds an ingredient of causation to precipitate a resulting disability. To decide the question we must have recourse both to what has been said judicially and to what has been done in the actual decision of relevant cases.

Claimant was an officer of his corporate employer and worked in its ice plant. In the course of his employment it was necessary for him to be in and out of a cold room where the temperature was kept at 25 degrees and, less frequently, in and out of a locker room where the temperature was colder. The floors of the cold room were damp and wet due to the cutting of ice and claimant's feet became wet. There is proof he found it uncomfortable to wear rubbers and would not wear them.

The board has found that claimant had arteriosclerotic peripheral vascular disease of the feet. There is no proof that this condition could be caused by the occupation — the proof is entirely the other way. But the board found the work aggravated the underlying condition and found this aggravation to be an occupational disease.

The pertinent findings are that claimant "became totally disabled as the result of the aggravation of a pre-existing condition of arteriosclerotic peripheral vascular disease of the feet and ankles, an occupational disease, which aggravation was due to the nature of his employment * * * to which all the employees of his class were subject * * * and which produced the disease as a natural incident of his employment and attached thereto a hazard which distinguished it from the usual run of occupations and which was in excess of the hazard attending employment in general."

There is, of course, no proof in the record that all employees in claimant's class had the pre-existing condition of arteriosclerosis, the "aggravation" of which (not the disease itself) was here found to be due to the nature of employment "to which all the employees of his class were subject". What the board had before it in the way of medical proof is that this individual employee, thus individually handicapped, suffered an aggravation of his own special condition due to the nature of his employment. This is quite a different thing.

It is possible to reconcile the decision of the board here with cases such as *Matter of Goldberg* v. *954 Marcy Corp.* (276 N. Y. 313) and *Matter of Harman* v. *Republic Aviation Corp.* (298 N. Y. 285) only by holding squarely that where a pre-existing physical condition is aggravated by the employment to the point of disability this is an occupational disease even though few, or none, of the other employees have, or ever get, the underlying disease and hence do not suffer the disabling aggravation.

The reconcilement of authority becomes possible only if one regards all weakened or diseased employees predisposed to be specially and adversely affected by the conditions of employment as being in a general class. In *Matter of Goldberg,* the bare words of the statute on "occupational disease" and "nature of the employment" were given implementation in the opinion of FINCH, J. (pp. 318, 319). The disease "is thereby required to be actually caused in the course of the employment and from the particular work the employee is performing". Nature of the employment means "conditions to which all employees of a class are subject" and which produce the disease "as a natural incident of a particular occupation" and attach to the work "a hazard" which "distinguishes it" from the usual "run" of occupations and from employment in general.

The court in *Matter of Harman* restated these views (p. 288) and gave approval to an additional definition from *Seattle Can Co.* v. *Department of Labor & Industries* (147 Wash. 303) that an occupational disease must be due " wholly " to causes " which are normal and constantly present and characteristic of the particular occupation " and one to which " Every worker in every plant of the same industry is alike constantly exposed to the danger of contracting " (147 Wash. 303, *supra,* at p. 309).

In *Matter of Goldberg* it was held that a cashier in an outside ticket booth suffering from blotches on her skin and weak and numb feet due to alternate hot and cold periods in the booth when the heater was turned on and off was not suffering from an occupational disease; and in *Matter of Harman* the contracting from a fellow employee of tuberculosis by a foreman's assistant working in a clean and well-ventilated shop was held not to be an occupational disease. Neither disease was found to be an incident to the work itself, the ticket booth condition being thought to be due to the failure of the employer to provide a " proper place " of employment and the contracting of tuberculosis from a fellow employee not being regarded as peculiar to that occupation.

Notwithstanding the implications of exclusive causation in the use of the word " wholly " under the Washington decision in the *Seattle Can* case, the actual trend of New York decisional law both in the Court of Appeals and in this court seems to be to examine the end result of the exposure to determine if the occupation itself caused the disablement and, if it did, to hold the disease to be " occupational " even if the employee brought within himself a predisposition to the disablement shared by no other employee of his class.

This actual trend in New York decisional law may easily be demonstrated. In *Matter of Moore* v. *Colonial Sand & Stone Co.* (261 App. Div. 857 [1941]) claimant was employed as a truck washer and greaser working on trucks " around water " in an unheated garage and got under trucks " with nothing to put under him ". It was found that he contracted tuberculosis as " a natural progression " from the exposures; and that the disease was " caused " and " aggravated " by the occupation. Permission to appeal was denied (285 N. Y. 860).

In 1950 *Matter of Paradiso* v. *Vuozzo* (277 App. Div. 802) was decided. There claimant, a plumber, had a displaced intervertebral disc suffered before he came to work for the employer. It was found that the usual heavy work of a plumber brought about symptoms which, together with the original injury, caused

a disability. The condition which existed because of the special weakness due to the earlier displaced disc was treated as an occupational disease.

In *Matter of Buchanan* v. *Bethlehem Steel Co.* (302 N. Y. 848 [1951]) the claimant had a congenitally weak back; and the medical testimony was that '' his work superimposed on a weak back caused his disablement '' (278 App. Div. 594). The work itself consisted of piling and binding of articles of steel, in which work claimant was engaged for about four years, but the disablement due to the condition of his back was held to be an occupational disease.

There is a tendency, too, to broaden the scope of the kind of occupation which could cause the disease when it can be seen clearly that some direct instrumentality of the work itself becomes the agent of infection. A good illustration is the telephone which passed tuberculosis on from an infected fellow worker to the claimant, a telephone operator. (*Matter of Mason* v. *Y. W. C. A. of City of N. Y.*, 271 App. Div. 1042; motion for leave to appeal denied 297 N. Y. 1037) which is cited in *Matter of Harman* (*supra,* p. 289). This is distinguishable from the *Harman* case only because the agent of transmission of the disease was the instrument with which claimant worked rather than direct contact with the fellow employee.

The language of the statute itself, cast in the very broadest terms, is literally sufficient to hold an aggravation of a pre-existing condition, even not common to employees generally, an occupational disease.

The decision and award should be affirmed, with costs to the Workmen's Compensation Board.

FOSTER, P. J., COON and IMRIE, JJ., concur; HALPERN, J., concurs in result.

Decision and award affirmed, with costs to the Workmen's Compensation Board.