In the Matter of the Claim of GEORGE WALLING, Respondent, against H. J. BAREHAM & SON et al., Respondents, and MARTIN W. UTZ et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, February 3, 1955.

*Myer Braiman* for appellants.

*Emmett Doyle* for claimant-respondent.

IMRIE, J. On August 23, 1945, George Walling, herein referred to as claimant, a steam fitter, sustained a fracture of the scaphoid bone of his right wrist while in the employ of respondent, H. J. Bareham & Son, herein referred to as Bareham. He was awarded compensation first for a 10% schedule loss and later for an 18% schedule loss of use of his right hand, the awards were paid, and the compensation case closed April 2, 1948. After returning to work he continued to complain of pain in the injured wrist and up the arm. By the time his case was closed it had been demonstrated that a small fragment of the scaphoid was separated and would not unite. In connection with and during the pendency of the earlier case carrier's physician, Dr. Prince, predicted that trouble with the wrist would continue accompanied by increasing disability and advised surgery to correct the condition. Periodically thereafter, as claimant continued at his regular work, there were flare-ups of the wrist trouble entailing temporary disability and loss of time at work.

In November, 1950, shortly after he entered the employ of respondent, Martin W. Utz, herein referred to as Utz, and after two or three days of continuous use of a screwdriver, the trouble recurred. He was off the job for a week. After that, he testified, " they favored me " and he " took it easy." In February, 1951, he was assigned to install a heating unit in a building where temporary heat was desired by February 15th. He used heavy tools in the sustained labor of routing, threading and cutting pipe. The unit was " tied in " ready for a test on Friday, February 9th. He reported for work on Monday, February 12th, but " just could not do anything." He stopped work at that time and on July 24, 1951, underwent an operation for the fusion of his wrist.

Notice of claim for compensation on account of the February, 1951, occurrence was filed March 20, 1951. The compensation

case relating to the 1945 accident was reopened and the two cases were carried on together. The Workmen's Compensation Board found that claimant was disabled while working for Utz following the excessive use of hammer, wrench and screwdriver, causing further injury to his right wrist and an occupational aggravation and acute exacerbation of degenerative arthritic changes in and about the wrist, with greater and increased disability thereof, an occupational disease. An award was made against Utz and his insurance carrier for the period of disability from February 12, 1951, to July 24, 1951 (the date of his operation), and an award for the disability following July 24, 1951, was apportioned between the employers Utz and Bareham and their insurance carriers.

Utz and his carrier appeal from such decision and awards. They contest the awards against them, disclaiming any liability, and contend that the award as for an occupational disease was improperly made. The ground of their disclaimer of liability is that claimant's work while in the employ of Utz caused, at most, a temporary episode of disability, unrelated to previous episodes and his intervening work, and attributable to the original ununited fracture as the only cause necessitating the operation.

Support is to be found in the record for such a position, but it is sharply opposed to substantial proof upon which the board made its findings. Several physicians reported and testified to the existence of degenerative changes around the wristbones. Among them was Dr. Fenstermacher, who referred to an elongation of the radial styloid and suggested that such a wrist could become stiff with continued work. " If you sit around and do not use the wrist there is no aggravation on the basis of increased use or increased motion beyond the limits. It seems to me this — whatever this process would be the progress would be slower than if you were doing those things [working after the original injury]. Whether this end result is going to be the same or whether it is not is very difficult to tell but it seems to me that aggravation based on repeated use should have something to do with the end result of the case.'' He expressed the opinion that claimant's condition prior to the fusion operation was the result of the 1945 accident " Plus the incidents [flare-ups after the case was closed in 1948] and everything from 1945 on '' aggravated by the work performed in 1950 and 1951. Dr. Maggio, indicating that the recurrent episodes were more than temporary and unrelated, testified that " each succeeding trauma such as a twist, kept producing these

symptoms and I felt that each time that occurred it was only going to make matters worse and the period, or the intervals between his work periods, was lessening all the time.'' In answer to the inquiry, '' There is no question, doctor, that his present disability [prior to the operation] and the disability which has continued since February of 1951 is either due to the ununited fracture or an aggravation by his work of that underlying condition. Either one of those two things would cause his disability?'' Dr. Maggio said, '' There is no doubt about it. It is my opinion, it is the result of both [an aggravation superimposed on an underlying condition caused by certain types of work which he does on different occasions].''

The finding of occupational disease was rational and in accord with recent court decisions. It is true that in this instance the remote cause of claimant's 1951 disability was the accidental wrist fracture. But there has followed an accumulation of demonstrated aggravations resulting in an abnormal condition so that he, '' thus individually handicapped, suffered an aggravation of his own special condition due to the nature of his employment '' (*Matter of Griffin* v. *Griffin & Webster,* 283 App. Div. 145, 147, motion for leave to appeal denied, 306 N. Y. 984). In *Matter of Buchanan* v. *Bethlehem Steel Co.* (278 App. Div. 594, affd. 302 N. Y. 848) this court held that claimant's congenital predisposition to back strain did not bar a finding of occupational disease growing out of lifting and pulling heavy steel articles. In *Matter of Griffin* v. *Griffin & Webster* (*supra,* p. 149) Mr. Justice BERGAN wrote, '' The language of the statute itself, cast in the very broadest terms, is literally sufficient to hold an aggravation of a pre-existing condition, even not common to employees generally, an occupational disease.''

The awards should be affirmed, without costs.

FOSTER, P. J., BERGAN, COON and ZELLER, JJ., concur.

Awards affirmed, without costs.