In the Matter of the Claim of LIBA SNIR, Respondent, v. J. W. MAYS, INC., et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.— GIBSON, P. J. Appeal by an employer and its insurance carrier from a decision of the Workmen's Compensation Board which awarded for disability caused by myositis, found by the board to be an occupational disease. The facts were stipulated and causal relationship is conceded, and the only issue is whether the disabling condition meets the test of occupational disease. As was stipulated, claimant, a cashier in the giftware department of the employer's department store, worked for four months at a cash register in an area where the air conditioning was very cold and created a draft on her right side;

which caused, according to the diagnosis of her attending physician, "chronic strain or myositis due to the recurrent insult in the nature of continuous blowing of the cold air on the back of claimant's neck"; her orthopedist also diagnosing "chronic myositis involving the muscles of the right posterior neck and right shoulder girdle, which he believed to be causally related to the exposure claimant related." It was stipulated, too, that "the myositis was caused by the draft." The board found "that as a result of the forced circulation of cold air from the store's air conditioning system blowing on claimant's neck area, she developed a myositis; that air condition [sic] systems presently are a distinctive feature of modern department stores generally, that in the subject case there is a recognizable link between claimant's disabling condition and the circulating cold air emanating from the store's air conditioning system; that therefore occupational disease and causal relationship are established." We believe that the award for disability thus caused was correct and, indeed, it would be difficult to justify any other result, in the face of the employer's concession that an appurtenance of its business, installed presumably to promote the profitable operation of its store, reacted upon claimant, while at work in the area in which her job positioned her and to which it confined her, so as to cause her disablement. It is true that claimant's physical movements in the performance of her work did not cause the disabling condition; but her physical presence in the area to which she was assigned and in which she was subjected to a continual draft was the basic cause of the disablement. The environmental factor here was not the atmosphere, as generally adjusted to a comfortable temperature and humidity, in which customers and employees could move about in comfort, but the positional risk and hazard of the cashier of the giftware department, whose station was at a cash register located in the direct line between two outlet ducts from which refrigerated air, stipulated to have been "very cold", was necessarily forced under pressure for effective distribution in a larger area. The general use of air conditioning in department stores is advanced by the board as a reason for sustaining the claim and by the minority in this case as a ground for disallowing it. In our view, this general use affords a sound and basic premise for a finding of occupational disease when a malfunction or even a fortuitous or necessary location of the parts or units of the system causes harm to an employee whose job location is within the area of constant and harmful exposure. The exposure was distinctive of claimant's job, as it would be in the case of every other employee who should work at the same cash register; and a like possibility of exposure was an incident of the employment of every other employee in that department store and in perhaps most others, even though "there was no proof that the harmful exposure would be injurious to the average workman." (*Matter of Moore* v. *Ford Motor Co.,* 9 A D 2d 165, 167.) The case seems to us indistinguishable from such cases as *Matter of Roetlinger* v. *Great Atlantic & Pacific Tea Co.* (17 A D 2d 76, affd. 13 N Y 2d 1102) and *Matter of Wolfe* v. *Brohman* (260 App. Div. 816, affd. 285 N. Y. 635) in each of which was sustained an award for disability or death of a butcher due to pulmonary disease, attributed not, of course, to the butcher's work activities in cutting meat, but to the environmental factor of the refrigerated air of the meat cooler which he was obliged to enter periodically. It is clear from the stipulated facts and the board findings in the case before us that, comparably to the butchers' cases, the blasts of extremely cold air, in this case upon claimant's fixed position, constituted the occupational hazard. It was this and not, as appellants' argument necessarily implies, the more evenly distributed cool, humidified air of the store generally that was at fault, if we assume the obvious, that the air was

necessarily colder and moving at greater velocity as it left the ducts than elsewhere in the area. Fully applicable to this case are the statements in another case upon which our affirmance rested: "The regular exposure to temperature extremes was certainly a 'distinctive feature of the claimant's job, common to all jobs of that sort' and the medical evidence made abundantly clear the 'recognizable link' between it and the disease (*Matter of Harman* v. *Republic Aviation Corp.,* 298 N. Y. 288)". (*Matter of Roettinger* v. *Great Atlantic & Pacific Tea Co.,* 17 A D 2d 76, 78, affd. 13 N Y 2d 1102, *supra.*) That there is "nothing unusual" about employment on air-conditioned premises, as the minority opinion has it, is not determinative. The hazard here was not the result of mere temperature and humidity control, but consisted in the mechanical expulsion upon claimant's neck and body of blasts of refrigerated air, at a "very cold" temperature. Nevertheless, atmospheric conditions alone can, of course, cause occupational disease, as witness the award for disability due to Bell's palsy caused by *natural* atmospheric conditions, claimant, while driving an open truck, suffering "exposure to cold air" as well as to "draught, cold and wind necessitated by his employment." (*Nayor* v. *Harwick Trucking Corp.,* 283 N. Y. 62, 63.) There is "nothing unusual", again in the words of the dissent, about cold water nor is its use peculiar to any industry or to the creamery industry, in particular, and the supposed test of usualness was sought to be applied, as it is here, to bar the claim of a creamery worker in *Matter of Benware* v. *Benware Creamery* (22 A D 2d 968, 969, affd. 16 N Y 2d 966) in which there was an award for disability due to Raynaud's disease, caused by the "exposure of claimant's hands to cold water, cold milk and cold air and of their repeated immersion in cold water"; but we held that "the test is not whether the disease is literally 'peculiar' to the occupation — a requirement which would eliminate most of the occupational diseases now recognized — but whether there exists 'a recognizable link between the disease and some distinctive feature of the claimant's job, common to all jobs of that sort.' (*Matter of Detenbeck* v. *General Motors Corp.,* 309 N. Y. 558, 560." (P. 969.) So, too, weather and its components "draught, cold and wind" (*Nayor, supra,* p. 63) are not unusual; and it is well recognized that the "conditions of employment which distinguish the occupational disease from the ordinary diseases of life" are sufficiently distinctive if "familiar harmful elements are present in excessive degree." (1 Larson, Workmen's Compensation Law, § 41.50; *Matter of Roettinger* v. *Great Atlantic & Pacific Tea Co.,* 17 A D 2d 76, affd. 13 N Y 2d 1102, *supra,* and cases cited at 17 A D 2d 79.) In a case closely parallel to this an award to a desk clerk for myositis caused by a draft from an air conditioning system was sustained on the ground of accident (*Matter of Greensmith* v. *Franklin Nat. Bank,* 21 A D 2d 576, affd. 16 N Y 2d 973) but that precedent does not, of course, militate against a finding of occupational disease in this case. (See *Matter of Waxman* v. *Paget,* 264 App. Div. 967; *Matter of Wolfe* v. *Brohman,* 260 App. Div. 816, affd. 285 N. Y. 635, *supra.*) If we look to the factor of traumatic causation in this case, this record fully supports the finding of an occupational disease thus caused, the trauma, of course, consisting of the "repeated insults to the neck muscles", to which the physicians attributed causation, exactly as the medical opinion rested upon "repeated insults of refrigerated air" in *Roettinger* (*supra,* p. 80; and see other cases of repeated trauma there cited). In *Benware* (*supra*) as previously in *Roettinger* (*supra*), the unsuccessful appeals to this court, and the dissenting opinions here, proceeded very largely (as they do again in this case) upon a particular construction of certain generalized language in *Matter of Goldberg* v. *954 Marcy Corp.* (276 N. Y. 313) and its contemporaries;

but that limited construction the Court of Appeals, in affirming, apparently did not accept. It seems abundantly clear that in those cases, as in this, the tests of occupational disease imposed by the Court of Appeals were met. Decision affirmed, with costs to the Workmen's Compensation Board. Taylor and Staley, Jr., JJ., concur; Herlihy, J., dissents and votes to reverse and dismiss in the following memorandum, in which Reynolds, J., concurs: The issue on this appeal is whether or not the distinctive feature of claimant's employment (cold air draft) which concededly caused the claimant's myositis is a condition to which all employees of claimant's class are subject. The facts and findings of the board are set forth in the majority opinion. The guidelines for occupational disease have been set down in many decisions of this court and the Court of Appeals. In *Matter of Goldberg* v. *954 Marcy Corp.* (276 N. Y. 313, 318–319) the court stated: "An occupational disease is one which results from the nature of the employment, and by nature is meant, not those conditions brought about by the failure of the employer to furnish a safe place to work, but conditions to which all employees of a class are subject, and which produce the disease as a natural incident of a particular occupation, and attach to that occupation a hazard which distinguishes it from the usual run of occupations and is in excess of the hazard attending employment in general. Thus compensation is restricted to disease resulting from the ordinary and generally recognized risks incident to a particular employment, and usually from working therein over a somewhat extended period. Such disease is not the equivalent of a disease resulting from the general risks and hazards common to every individual regardless of the employment in which he is engaged." In *Matter of Harman* v. *Republic Aviation Corp.* (298 N. Y. 285, 288) the court stated: "There must be a recognizable link between the disease and some distinctive feature of the claimant's job, common to all jobs of that sort." In *Matter of Roettinger* v. *Great Atlantic & Pacific Tea Co.* (17 A D 2d 76, 78, affd. 13 N Y 2d 1102) we quoted the above rules of the Court of Appeals and held that the board could properly find that the temperature extremes were distinctive to all jobs of that sort and were a hazard to that particular occupation (butcher) which were in excess of those hazards attending employment in general. In *Matter of Benware* v. *Benware Creamery* (22 A D 2d 968, 969, affd. 16 N Y 2d 966) we were primarily concerned with the issue of a predisposition to Raynaud's disease, but it was held that the causative factor was one common to all jobs of that sort. The majority in this case quote from *Matter of Goldberg* v. *954 Marcy Corp.* (*supra*), and if the intent is to hold that this case is within the rule of that case, then we are constrained to disagree since this record establishes, at most, only that the claimant had an unsafe place to work (cold air draft) but does not establish that such a hazard is common to her type of work. If it is the intent of the majority to hold that a disease caused by a working condition — "the area in which her job positioned her" — which is not common to the type of work as a class may be an occupational disease, this is an extension of the concept of occupational disease which we deem to be not warranted by the decisional law cited by the majority and to be in contradiction of the established rules. The fact of the matter is that the *cold air draft* is not one distinctive to the employment of cashier in a department store. That any employee working at that particular position as the claimant or at any position where there is a cold air draft from an air vent is subject to a disease caused thereby, does not suffice to make it (cold air draft) a hazard common to cashiers in general. In *Roettinger* it was obvious that, generally speaking, butchers were subject to cold air extremes. In *Benware*, it was obvious that all employees performing the claimant's type

of work exposed their hands to cold water. It is thus readily apparent that we were holding that the exposure or hazard was one common to all jobs of the types involved in those cases. The majority also cite *Matter of Nayor* v. *Harwick Trucking Corp.* (283 N. Y. 62). In that case it appears that the claimant was a truck driver and drove an open truck. The Court of Appeals held that the cold draft was sufficient to cause the disease. Again, it is obvious that a cold draft is a hazard of all drivers of open trucks. There is nothing unusual about being employed on premises having air conditioning. The basic principles for establishing occupational disease in Workmen's Compensation still remain that " ' There must be a recognizable link between the disease and some distinctive feature of the claimant's job, common to all jobs of that sort * * * which produce the disease as a natural incident of a particular occupation, and attach to that occupation a hazard which distinguishes it from the usual run of occupations and is in excess of the hazard attending employment in general.' (*Matter of Harman* v. *Republic Aviation Corp.*, 298 N. Y. 285, 288; * * *) ". (*Matter of Detenbeck* v. *General Motors Corp.*, 309 N. Y. 558, 560–561.) It does not appear that the majority are holding that the air conditioning either in this particular store or generally creates cold air drafts. The record would not warrant such a finding and the claimant testified that the drafty cold air was limited to the location of her register position. In *Matter of Champion* v. *Gurley* (299 N. Y. 406, 408–409) the court, in reversing a finding of occupational disease, stated: " The incident described as responsible for the onset of the disease was limited to the claimant's personal, individual situation due to the temporary location of his desk on a platform. * * * The medical testimony affords causal connection, but this of itself does not supply proof adequate to establish the thrombophlebitis suffered by the claimant here as an occupational disease within the accepted definition of its meaning (*Matter of Goldberg* v. *954 Marcy Corp.*, *supra*; *Matter of Harman* v. *Republic Aviation Corp.*, *supra*, and cases cited therein; cf. *Matter of Peloso* v. *D'Alessio Bros.*, 298 N. Y. 582; *Matter of Nayor* v. *Harwick Trucking Corp.*, 283 N. Y. 62; *Matter of Foster* v. *Gillinder Bros.*, 278 N. Y. 348; *Matter of Wolfe* v. *Brohman*, 285 N. Y. 635). It is proof of the underlying elements that opens the way for a finding of ultimate fact. Lacking such proof, a finding of ultimate fact even though affirmed, may not be approved and a determination based thereon must be annulled." This record would support a finding that the employer failed to install a mechanical control which would have suppressed the cold air draft, which it is stipulated caused the claimant's illness, or that the employer failed to move the cash register position out of such draft, in either event providing an unsafe place to work, and which the board might have found to be an accident under the Workmen's Compensation Law. (Cf. *Matter of Greensmith* v. *Franklin Nat. Bank*, 21 A D 2d 576, affd. 16 N Y 2d 973.) Here, it was the malfunction of the air conditioner that caused the complaint by the claimant. However, the record does not warrant a finding that the cold air draft, the underlying element, was common to this type of employment and accordingly the finding of the ultimate fact of occupational disease must be reversed. We are not determining that under some circumstances air conditioning might not be the cause of an occupational disease but that the present record does not establish that myositis was an occupational disease. The majority, by some magic, seeks to read into the prevailing opinions in *Benware* and *Roettinger* (affirmed by the Court of Appeals without opinion) a new theory of occupational disease, not based on sound fundamentals but on a word-coined expression " positional risk ", thereby eliminating the long standing

requirement that an occupational disease results from "conditions to which all employees of a class are subject, and which produce the disease as a natural incident of a particular occupation". (*Matter of Goldberg* v. *954 Marcy Corp., supra,* p. 319.) The Court of Appeals may direct such a drastic departure from present decisional law — affirming without opinion is not such a directive — but it should not be instituted directly or inferentially by this intermediate appellate court. The decision should be reversed and the claim dismissed.