19 N.Y.2d 373 (1967)
In the Matter of the Claim of Julius Paider, Appellant,
v.
Park East Movers et al., Respondents. Workmen's Compensation Board, Respondent.
In the Matter of the Claim of Liba Snir, Respondent,
v.
J. W. Mays, Inc., et al., Appellants. Workmen's Compensation Board, Respondent.
Court of Appeals of the State of New York.
Argued February 15, 1967.
Argued January 19, 1967
Decided April 13, 1967.
Louis Mendelson, Thomas J. Sacco and William Doblin for appellant in the first above-entitled proceeding.
Joseph M. Soviero and Bernard F. Farley for respondents in the first above-entitled proceeding.
No appearance for Workmen's Compensation Board, respondent in the first above-entitled proceeding.
Daniel Powell and Arthur B. Erenstoft for appellants in the second above-entitled proceeding.
Louis J. Lefkowitz, Attorney-General (Harry Rackow, Ruth Kessler Toch and Daniel Polansky of counsel), for Workmen's Compensation Board, respondent in the second above-entitled proceeding.
Opinion by Judge SCILEPPI. All concur, Judge BURKE concurring in result upon the opinion at the Appellate Division, except Judge BERGAN, who dissents and votes to reverse in an opinion in which Judge KEATING concurs.
Opinion by Judge SCILEPPI. All concur except Judge BERGAN, who dissents and votes to affirm in an opinion in which Judge KEATING concurs and Judge BURKE, who dissents and votes to affirm upon the opinion at the Appellate Division.
*377 SCILEPPI, J.
These are two workmen's compensation cases where payment is sought for disabilities allegedly resulting from occupational diseases (Workmen's Compensation Law, § 3, subd. 2).
Matter of Goldberg v. 954 Marcy Corp. (276 N.Y. 313) establishes the definition of "occupational disease" as "one which results from the nature of the employment, and by nature is meant, not those conditions brought about by the failure of the employer to furnish a safe place to work, but conditions to which all employees of a class are subject, and which produce the disease as a natural incident of a particular occupation, and attach to that occupation a hazard which distinguishes it from the usual run of occupations and is in excess of the hazard attending employment in general. Thus compensation is restricted to disease resulting from the ordinary and generally recognized risks incident to a particular employment, and usually from working therein over a somewhat extended period. Such disease is not the equivalent of a disease resulting from the general risks and hazards common to every individual regardless of the employment in which he is engaged." (Pp. 318-319; see, also, Matter of Harman v. Republic Aviation Corp., 298 N.Y. 285, 288-289; Matter of Detenbeck v. General Motors Corp., 309 N.Y. 558, 560-561.)
The two cases presently under review require the application of this well-settled definition.
Matter of Snir
Claimant was a cashier in the J. W. Mays, Inc. department store. As stipulated, she worked at a cash register in a place in the store where she received a cold draft on her right side from the air conditioning; this caused a "chronic strain or myositis" involving "the muscles of the right posterior neck and right shoulder girdle".
The Appellate Division, two Justices dissenting (26 A D 2d 752), affirmed a finding by the Workmen's Compensation Board that this was an occupational disease. The majority below *378 relied heavily on Matter of Roettinger v. Great Atlantic & Pacific Tea Co. (17 A D 2d 76, affd. 13 N Y 2d 1102) wherein it was said that "The regular exposure to temperature extremes was certainly a `distinctive feature of the claimant's job, common to all jobs of that sort' and the medical evidence made abundantly clear the `recognizable link' between it and the disease (Matter of Harman v. Republic Aviation Corp., 298 N.Y. 285, 288)" (17 A D 2d, p. 78).
We reverse. This case is governed by Matter of Goldberg v. 954 Marcy Corp. (supra). There, the claimant was a cashier working in a ticket booth outside a theatre. The booth was warmed by an electric heater controlled by the claimant. She claimed that discoloration of her limbs and numbing of her feet were caused by the alternating heat and cold within the booth. We decided that there was no occupational disease. In doing so, we said: "we search the record to find if there is any evidence to show that the plaintiff was suffering from an occupational disease. Her occupation was that of handling cash and theatre tickets and it is obvious that this work in and of itself could not have caused the leg injury or disease. The `disease' which befell her, therefore, was caused not by the nature of her employment, but by the failure of her employer to furnish her with a proper and safe place in which to work" (p. 319).
The claimant here, as in Goldberg, was not subjected to an ailment necessarily a concomitant of the job of cashier. Cashiers as a class are not hired with the expectation that the work will be performed in front of a cold air ventilator. But in the particular situation in this case, the work was performed in such a hostile location. In Roettinger (supra) the claimant was a butcher who contracted emphysema because he was required to spend portions of his time in refrigerated air, as one might expect because of the nature of the work. In the present case, it cannot be said that the cold blasts from the air conditioning were "common" to all cashiers' jobs; rather it was the place to work, not the work itself, that was responsible for claimant's illness. Whatever other basis there may be for recovery, we find none under subdivision 2 of section 3 of the Workmen's Compensation Law (see Labor Law, § 200; Matter of Greensmith v. Franklin Nat. Bank, 16 N Y 2d 973).
*379 Matter of Paider
The claimant in this case was a truck driver who contracted tuberculosis from one Tom Smith, a trucker's helper assigned to work with claimant. The Workmen's Compensation Board found that the claimant's tuberculosis was an occupational disease contracted through the use of a common instrument by Smith and claimant; i.e., the cab of the truck wherein both spent a considerable period of time. The Appellate Division reversed the decision and dismissed the claim rejecting the argument that the truck cab here was as much an "instrument" as the telephone headset in Matter of Mason v. Y. W. C. A. of City of N. Y. (271 App. Div. 1042, mot. for lv. to app. den. 297 N.Y. 1037); or the pipette in Matter of Hovancik v. General Aniline & Film Corp. (8 A D 2d 171).
We affirm. This case is governed by Goldberg (supra) and particularly by Matter of Harman v. Republic Aviation Corp. (298 N.Y. 285). In Harman the claimant, a foreman's assistant, worked in close physical contact with one Humphrey, from whom claimant contracted tuberculosis. We dismissed the claim, saying (p. 290): "The hazard that rendered claimant subject to the disease was Humphrey and not any condition that inhered in the nature of the employment itself. Any one, whether supervisor, laborer, factory hand or clerical worker, in any field of work, in any occupation or employment, whether factory, store or office, may contract tuberculosis, given a fellow worker already ill with that disease. No peculiarity of claimant's job induced the disease or heightened the chance of infection; workers in other occupations, carried on under similar conditions, would have been just as likely as claimant to fall victim to the ailment if a Humphrey were about. As thus becomes evident, claimant's disease resulted not from the ordinary and generally recognized hazards incident to a particular employment, but rather from the general risks common to every individual regardless of the employment in which he is engaged. (See Matter of Goldberg v. 954 Marcy Corp., supra.)" (To the same effect, see Matter of Buckley v. Gallagher Bros. Sand & Gravel Corp., 300 N.Y. 447.)
In the present case, the hazard was Smith, not any peculiar feature of claimant's employment as a truck driver. And, *380 therefore, claimant's illness was not an "occupational disease".
In sum, we view an occupational disease as an ailment which is the result of a distinctive feature of the kind of work performed by claimant and others similarly employed, not an ailment caused by the peculiar place in which particular claimant happens to work, as in Snir, or caused by ordinary contact with a fellow employee as in Paider (see 1A Larson, Workmen's Compensation Law, § 41.31, p. 622.113; § 41.50, p. 622.135-622.136; Barker, New York Workmen's Compensation: Occupational Disease, 31 Albany L. Rev. 15, 19-20; Teresi, Medical Aspects of Occupational Disease in Relation to Workmen's Compensation, 31 Albany L. Rev. 26, 28-29). The Legislature can extend the meaning of occupational disease to include all illness causally related to the worker's employment. We cannot.
Accordingly, in Matter of Snir the order should be reversed and the claim dismissed, without costs; in Matter of Paider the order should be affirmed, without costs.
BERGAN, J. (dissenting).
When one reads the language of Judge FINCH of almost 30 years ago in Matter of Goldberg v. 954 Marcy Corp. (276 N.Y. 313), it is at once to be seen that the gloss added by this opinion to the definition of "occupational disease" is more restrictive than the words of the Workmen's Compensation Law itself.
The statute does not undertake to define precisely what is meant by the "occupational" relation of disease to employment (Workmen's Compensation Law, § 3, subd. 2). Rather, it lays out a schedule in which there is a description of a list of diseases related to a list of processes. These relationships are grouped as "occupational diseases" (§ 3, subd. 2, first par.).
Some of the relationships are obvious. For example, arsenic poisoning is in the column of occupational diseases related to "Any process involving the use of or direct contact with arsenic". But the legislative draftsman foresaw that some diseases actually related to occupations might not easily be put in categories in advance, and a descriptive device was employed which seems intended to leave inclusion of diseases rationally to be deemed "occupational" to the case by case judgment of the Workmen's Compensation Board and to the oversight of judicial review.
*381 This group follows a long list of 28 group categories and includes within the statutory list "Any and all occupational diseases" contracted in "any" employment listed in subdivision 1 of section 3 of the statute, which, in turn, enumerates a large number of activities.
Read literally this would seem to mean a disease produced by the work or by the environment of the work. The exclusionary sweep of Goldberg produces a much more limited effect. It is "restricted", says the Goldberg opinion (p. 319), to disease resulting from the ordinary and "generally recognized risks incident to a particular employment" and "usually" incurred over "a somewhat extended period".
Such a "disease" is not the "equivalent of a disease" which one risks generally from common hazards (276 N.Y. 313, 319). Literally taken, this means that if the kind of disease a man gets due to his work is one which he risks getting elsewhere or if it is not "generally recognized" as a "natural incident of a particular occupation", it is not compensable.
The difficulty with a judicial construction of a statute more restrictive than the statute itself is that there normally follows a struggle between the restrictive effect of the judicial decision and the less restrictive scope of the statute. That is exactly what has happened since Goldberg. There has been a tendency to distinguish its language in the actual application of the statute and to follow more directly the way the statute seems on its face to lead.
It must be apparent that there are many diseases which ought to be treated as "occupational" within the scope of the statute, which are truly brought on by the work itself or by the environment of the work, but which could be contracted in other ways and which may not "generally" be regarded as so special a "hazard" of the particular occupation as to distinguish it from the usual run of occupations.
It would be expected that so restrictive an interpretation of a liberally framed statute as Goldberg imposed would not be followed literally; and it is easy to demonstrate it has not been followed literally.
Pulmonary emphysema and fibrosis are not diseases which are the natural incidents of the work of a butcher. They do not attach as a special hazard to that occupation, distinguishing *382 butchering, in this respect, "from the usual run of occupations". Still, the court held in Matter of Roettinger v. Great Atlantic & Pacific Tea Co. (13 N Y 2d 1102) that the butcher who went in and out of refrigerators had thereby contracted a pulmonary condition which ultimately led to emphysema and fibrosis, and these were diseases appropriate to butchering. It is impossible, logically, to reconcile this decision with the literal language of Goldberg.
The "recognizable link" between the exposure to low temperatures and the disease, upon which Judge SCILEPPI relies, is only part of the answer to the problem. If all we needed was a "recognizable link" between exposure and disease, there would be no division in the court over the cases now before us because the "recognizable link" is certainly shown in both cases.
A recent comment on Roettinger is that the "recognizable link" between the job and the disease "seems no more nor no less than ordinary causal relationship" and the decision "stands as a valid and emphatic extension of the limits of coverage at least in cases involving original contraction of the disease in employment."[*]
The plain fact is that Roettinger cut through the Goldberg requirement that an occupational disease could only be one which was "a natural incident" to the occupation itself. No one could pretend that emphysema or fibrosis were "natural incidents" of working as a butcher. All that could be said was that in Roettinger there was a relationship between the environment of the work and the ultimate occurrence of these diseases.
Nor is Roettinger the only decision which breaks through the restrictive gloss on the statute. There would be equal difficulty in fitting the Goldberg criteria literally to the decision in Matter of Mason v. Y. W. C. A. of City of N. Y. (271 App. Div. 1042, mot. for lv. to app. den. 297 N.Y. 1037). There, a telephone operator contracted tuberculosis from a phone mouthpiece which *383 had been used by a fellow employee who had tuberculosis. This, surely, was not a "natural incident" of a "particular occupation". It was, on the contrary, a highly fortuitous event in the employment. But the contraction of tuberculosis there could be found, and was found, an employment-associated hazard. Very similar in its operational effect is Matter of Hovancik v. General Aniline Film (8 A D 2d 171), where an employee using a pipette to draw up fluid for testing dyes contracted tuberculosis. Another employee who had used the pipette had tuberculosis. A finding this was an occupational disease was sustained.
In 1965 this court sustained an award based on Raynaud's disease, where the claimant working in a dairy plant had his hands exposed to cold water and cold milk, against the argument pursuant to Goldberg that the disease was not characteristic or peculiar to this occupation and, therefore, not an "occupational disease" (Matter of Benware v. Benware Creamery, 16 N Y 2d 966).
In Matter of Harman v. Republic Aviation Corp. (298 N.Y. 285), claimant was found by the board to have contracted tuberculosis from a fellow employee with whom he was "in fairly close contact" (p. 287). The benches at which they worked were a few feet apart. The room in which they worked, however, was a "clean and well-ventilated" shop. The court reversed the award and dismissed the claim on the ground that tuberculosis thus contracted was not an occupational disease within the terms of the statute. The physical environment as established by the employer itself seemed to have played no effective role in the transmission of the disease.
In both the cases before us, therefore, the awards made by the board ought to be sustained, since they are based on a showing of a recognizable link, confirmed by medical opinion, between the occupationally created environment and the disease in an occupation listed in the statute as appropriate for relief for "any occupational disease".
In Paider, claimant worked in close contact for a number of months  from January to November, 1960  with a fellow employee who has been shown to have had tuberculosis in an active and communicable stage. They were truckmen; the proof *384 is the work threw them together in a closely confined and poorly ventilated cab. Claimant, at the end of this period, was found to have contracted tuberculosis.
There is adequate medical opinion attributing claimant's infection to this employment contact. The Workmen's Compensation Board made an award based on its finding that claimant's disease was occupational. The board found "that claimant's hazardous exposure and contraction of tuberculosis were due to the nature of the employment, and that occupational disease is established".
The physical condition of close confinement, with poor ventilation in the truck cab, the situs of the employment, found by the board to have been an effective condition for transmission of the disease, comes logically within the area in which awards for occupational disease have been sustained.
The Snir case is governed by similar principles. It is demonstrated medically and found by the board that the work environment is linked to the disease. The court seems to be making a retrograde step in re-establishing all the literal difficulties in interpreting the occupational disease statute created by Goldberg, which a series of decisions liberally oriented to the language and purpose of the statute seemed to have been able to redress.
In Paider, the order should be reversed; in Snir, the order should be affirmed.
In Matter of Paider: Order affirmed, without costs.
In Matter of Snir: Order reversed and claim dismissed, without costs.
NOTES
[*] Barker, Robert A., New York Workmen's Compensation: Occupational Disease, 31 Albany L. Rev. 15, 21. The analysis of Roettinger is developed largely on the exposition of the opinion of Justice GIBSON at the Appellate Division.