■ In the Matter of the Claim of GERALD L. BENWARE, Respondent, v. LEO F. BENWARE CREAMERY et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.— AULISI, J. This is an appeal by the employer and carrier from a decision of the Workmen's Compensation Board which unanimously affirmed a Referee's determination and award. Claimant suffered from Raynaud's disease, a vaso-motor disturbance which is functional rather than organic in nature and which affects chiefly the hands, causing them to become white and cold, then congested and finally in some cases, gangrenous. Appellants dispute the occupational nature of claimant's ailment and also argue that the record is devoid of substantial medical evidence of disability during the period for which the awards were made. Claimant was employed in his father's creamery and his duties included bottle washing, pasteurizing, bottling milk, putting milk in a cooler and cleaning up the milking equipment. In the Fall of 1962 claimant noticed his right index finger was becoming white and numb. Gradually all his fingers got the same way until, in January, 1963, the fingers of both hands were swollen, discolored and stiff. After seeing his own doctor, claimant consulted a specialist in Montreal who diagnosed the condition as Raynaud's disease and recommended that claimant stop working in an atmosphere where his hands were exposed to wetness and cold. Both claimant's doctor and the carrier's expert agreed with the diagnosis of the Montreal specialist that claimant suffered from Raynaud's disease, but they differed in their opinions on causal relation. Claimant's expert testified that the precise cause of the disease was unknown but that claimant's exposure to cold would cause the manifestations of the disease. The carrier's expert merely stated that the work did not cause the disease. We believe there is substantial evidence supporting the board's finding of occupational disease. As required by the rule set down in *Matter of Detenbeck* v. *General Motors Corp.* (309

N. Y. 558), there is proof of a disability brought on by a "distinctive feature of the claimant's job, common to all jobs of that sort" (*Matter of Detenbeck* v. *General Motors Corp., supra,* p. 560), i.e., cold liquids. The board found that claimant's exposure to cold as a result of his occupation precipitated disabling symptoms. While Raynaud's disease apparently affects only persons with a predisposition toward this particular condition, this is analogous to many infirmities the entire science of which are presently unknown. Other symptomatic diseases have frequently been held occupational in nature. (*Matter of White* v. *Iroquois Gas Corp.,* 11 A D 2d 572, affd. 10 N Y 2d 869; *Matter of Rogan* v. *Charles F. Noyes, Inc.,* 10 A D 2d 765, mot. for lv. to app. den. 8 N Y 2d 705; *Matter of Sheehy* v. *Doyle,* 8 A D 2d 267, mot. for lv. to app. den. 7 N Y 2d 706.) There is substantial evidence presented to establish a causative link between the disability and claimant's occupation. Further, there is ample evidence that disability continued during the period for which the awards were made. Decision affirmed, with costs to the Workmen's Compensation Board. Herlihy and Hamm, JJ., concur; Gibson, P. J., concurs in the following memorandum, in which Herlihy, Aulisi and Hamm, JJ., concur: The board finding is that exposure "to cold water while washing milking equipment and bottles * * * precipitated disabling symptoms in both hands, constituting an occupational disease * * * due to natural hazard of claimant's employment to which all employees of the class are subjected, and was contracted in the employment." Appellants contended in their application to the board for review of the Referee's decision that the condition is not "peculiar" to any occupation or to the creamery industry, and the same contention was advanced upon the hearings and particularly upon examination of the medical witnesses; but the test is not whether the disease is literally "peculiar" to the occupation — a requirement which would eliminate most of the occupational diseases now recognized — but whether there exists "a recognizable link between the disease and some distinctive feature of the claimant's job, common to all jobs of that sort." (*Matter of Detenbeck* v. *General Motors Corp.,* 309 N. Y. 558, 560.) There was evidence of continued exposure of claimant's hands to cold water, cold milk and cold air and of their repeated immersion in cold water, all in connection with his employment in a creamery. He testified that it was when he was working with cold materials that his hands would become numb and white. He said, "The first thing in the morning I was running a paper machine, putting milk in paper cartons, and these cartons, the temperature of them is about 35, and you handle them, and of course your hands are — they have a tendency to be wet for about an hour, and after I come back in the afternoon I'm washing off the equipment, rinsing it with cold water, and that's when it bothered me. Some days it would only bother me for a short time and a half dozen times or so it wouldn't go away until the next day." Appellants' medical expert reported that, contrary to another physician's advice, claimant continued this work "for about three weeks after this, when the hands became more painful and at night became purplish and swollen" but that since he stopped work "the process has died down and the length of pain, when it does occur, is much less." This same physicain — examining and reporting on behalf of the carrier — found "causal relationship between the type of work done and the onset of symptoms" and said that "the best treatment for his condition at present is to avoid extremes of heat or cold". Claimant's attending physician said that it was possible that exposure to cold "would cause the manifestations of these symptoms" and, when asked the proper treatment, said "Removal of the cause, which I think in this case was the cold water." That the board could properly accept the above-quoted lay and medical evidence as establishing a "definite link"

between the disease and a "distinctive feature" of the job appears self-evident. "That the disease is uncommon does not necessarily remove the question from the board's domain of fact, as was held in *Matter of Preusser* v. *Allegheny Ludlum Steel Corp.* (4 A D 2d 727, affd. 4 N Y 2d 773), in which the employer argued unsuccessfully that the disease was not occupational because there was no proof that the harmful exposure would be injurious to the average workman." (*Matter of Moore* v. *Ford Motor Co.*, 9 A D 2d 165, 167.) Appellants' medical expert, whose report has been quoted, later testified and, after first denying causation, said that "the work could cause an aggravation of a pre-existing condition" and claimant's expert, on cross-examination, adopted the proffered suggestion of aggravation, or at least admitted the possibility; and appellants contend that thereby any award is barred. In finding that the "exposure precipitated disabling symptoms", after quoting the evidence that such exposure "caused a manifestation of the symptoms", the board apparently rested its decision on work-connected precipitation of a disease to which claimant was predisposed, rather than on aggravation of a disease already existent. The disease having been linked to a form of exposure distinctive of the occupation, so as to establish occupational disease generally, it is not, upon this record, particularly important whether the causative factor be deemed a precipitant or an aggravation. (*Matter of Detenbeck* v. *General Motors Corp., supra,* pp. 561, 562.) Consequently, I vote to affirm. Reynolds, J., dissents in the following memorandum: We are again faced with the question of what the Legislature intended to cover by "Any and all occupational disease" in paragraph 29 of subdivision 2 of section 3 of the Workmen's Compensation Law. Our Court of Appeals spoke in *Matter of Detenbeck* v. *General Motors Corp.* (309 N. Y. 558, 560–562): "'An ailment does not become an occupational disease simply because it is contracted on the employer's premises. It must be one which is commonly regarded as natural to, inhering in, an incident and concomitant of, the work in question. There must be a recognizable link between the disease and some distinctive feature of the claimant's job, common to all jobs of that sort. As this court observed in *Matter of Goldberg* v. *954 Marcy Corp.* (276 N. Y. 313, 318–319), an occupational disease is one "which results from the nature of the employment, and by nature is meant * * * conditions to which all employees of a class are subject, and which produce the disease as a natural incident of a particular occupation, and attach to that occupation a hazard which distinguishes it from the usual run of occupations and is in excess of the hazard attending employment in general."'" (*Matter of Harman* v. *Republic Aviation Corp.*, 298 N. Y. 285, 288; *Matter of Champion* v. *Gurley*, 299 N. Y. 406.) "Although this claimant incurred his disability while working for appellant, the nature of his employment was not such as to have a tendency to induce a similar malady in the average workman. Insofar as it caused this result, the work in which he was engaged simply amounted to the ordinary wear and tear of life impinging on the infirmity with which this man had been born and which he had carried with him during all of his previous life. That is not what the Legislature intended to cover by 'Any and all occupational disease' in paragraph 29 of subdivision 2 of section 3 of the Workmen's Compensation Law. As was said in *Matter of Harman* v. *Republic Aviation Corp.* (*supra,* p. 287): 'A contrary decision, approval of the award, would transform workmen's compensation into life and health insurance.' It would encroach upon the field of the disability benefits law enacted by chapter 600 of the Laws of 1949, whereunder '"Disability" during employment means the inability of an employee, as a result of injury or sickness not arising out of and in the course of employment, to perform the regular duties of his employment'

(§ 201, subd. 8). \* \* \* There must be a recognizable link between the disease and some distinctive feature of the claimant's job. This test is not met where disability is caused by an aggravation of a condition which is not occupational in nature. If an employee contracts an occupational disease, he is not to be prejudiced by reason of a pre-existing illness or defect, but neither is he to be preferred over other employees by creating a different class of compensable disabilities for his benefit." Since that rule was established, the board and this Appellate Division in my opinion have at times not followed it, and since that time all affirmances by the Court of Appeals of these troublesome cases that I can find were by "no opinion". Thus the Court of Appeals has remained silent. It could be that some of the confusion arises from the reasoning that since an *accident* arising out of and in the course of employment which results in the aggravation of a pre-existing physical disability is without doubt compensable, an occupational aggravation of a pre-existing disease should likewise be compensable. Such a conclusion, of course, does not logically follow. The Court of Appeals has flatly said in *Detenbeck* that the aggravation of a condition which is not occupational in nature is not compensable. If this is not the rule and *Detenbeck* is no longer to be followed it would be most helpful to all those engaged in the administration of the Workmen's Compensation Law if such an expression were made and the air cleared. Many engagements in semantics have been resorted to so as to avoid the rule in *Detenbeck*. Loose expressions such as "caused the manifestation", "precipitated the disease" are twisted to form a basis for a claimed "contraction of a disease" or "cause of a disease". But in these cases it always appears definitely as in this case that we are concerned with the aggravation of a disease which is not occupational in nature, the aggravation of an underlying condition. In this case witness the testimony of the only doctor who testified for the claimant: " Q. Now, is it your opinion that the exposure to cold water and/or milk caused an aggravation of a pre-existing condition? A. Yes definitely. Q. Is that your opinion? A. Yes. Q. So that, doctor, the exposure rather than being a cause of Raynaud's disease was actually an aggravation of a pre-existing condition? A. I would say so." and the testimony of the appellant's medical expert: " Q. Now, doctor, based upon the testimony here this morning and the contents of your report and examination, do you have an opinion as to whether or not the exposure as outlined by the claimant and the degrees of temperature which — to which he was exposed is a competent producing cause of Raynaud's disease? A. No sir. Q. Do you have an opinion, doctor? A. Yes sir. Q. Doctor, what is that your, opinion? A. I do not think it caused this Raynaud's disease." *On this record can there be any doubt that this is an aggravation case?* Observe the very recent significant case of *Matter of Hoare* v. *Great Atlantic & Pacific Tea Co.* (20 A D 2d 598, affd. without opinion 15 N Y 2d 493). *This case based on Raynaud's disease is exactly the same as the instant case,* with the exception that the exposure in *Hoare* was more marked and more substantial than here where we are involved with immersing of hands in tap water which everybody does several times a day. In *Hoare,* however, the board held that claimant, a meat wrapper in a super market's refrigerated storage room, *did not* suffer an occupational disease but rather that her disability was caused by an aggravation of a pre-existing condition which is not occupational in nature. It is no answer to affirm in the instant case and say, well, in the *Hoare* case the board did not grant compensation. It is no answer to say the board does not have to be consistent. It is no answer to say that we are dealing with social legislation. It is no answer to affirm without opinion. I am sure Mrs. Hoare would not be satisfied with any of these answers, and she would

be extremely unhappy were this present case affirmed by the courts, and justly so. This is an instance where we have no right in justice to claimants to blow "hot and cold" on the exact same factual situations; one result cannot be "white" and the other "black". The Dupuytren's contracture cases referred to by the majority *were a calculated departure, at least by this court,* from the *Detenbeck* rule because of the unique disease and *its frequent occurrence amony brewery workers.* These cases are, in my opinion, *sui generis* and do not constitute a basis for the further extension and warping of the *Detenbeck* rule to include comparatively rare predispositions such as Raynaud's disease. Raynaud's disease is defined in Stedman's Medical Dictionary as follows: "1. Symetrical asphyxia, symetrical gangrene of the extremities; a disease affecting chiefly the hands which become white and cold, then congested and finally, in some cases, gangrenous; these changes are accompanied by neuralgic pains, tingling, burning and other paresthesias. The affection is regarded as a vasomotor disturbance, probably of central origin. 2. Angina Vasomotoria." It is conceded that it is a rare disease with the etiology unknown. It seems to me that we have gone about as far as we can go with loose judicial legislation in this field and since under the statute and *Detenbeck* this clearly does not constitute an occupational disease and the Legislature has not seen fit to change the statute, we should reverse and dismiss this claim.