**ALEUTIAN HOMES and Alaska Workmen's Compensation Board, Appellants,**

v.

**Norma H. FISCHER, Appellee.**

**No. 668.**

Supreme Court of Alaska.

Oct. 7, 1966.

6. 78 Wyo. 1, 318 P.2d 368, 370–371 (1957).

7. 255 Iowa 557, 123 N.W.2d 49, 57–58 (1963).

8. 181 Or. 470, 182 P.2d 412, 415 (1947).

George N. Hayes and James K. Singleton, Delaney, Wiles, Moore & Hayes, Anchorage, for appellants.

Martin A. Farrell, Jr., and Allen L. Jewell, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

## OPINION

RABINOWITZ, Justice.

Early in December 1963 appellee Norma H. Fischer was employed by appellant Aleutian Homes as a secretary-bookkeeper. By Christmas of that year the skin on appellee's hands had "erupted" and become "itchy and painful." This condition continually worsened until the "weeping" of her hands interfered with work to such an extent that during the second week in February 1964 she discontinued her employment. In August of that year appellee filed an application for temporary total disability with the Alaska Workmen's Compensation Board.

A hearing was held before the Board in September 1964, and thereafter the Board rendered a decision in which it denied compensation. Appellee then appealed the Board's denial to the superior court which, after hearing the matter on the record, reversed the Board's decision and remanded the case for determination of the amount of compensation to be awarded to appellee and additionally to determine appellee's medical expenses, costs, and attorney's fees. Appellant Aleutian Homes now brings this appeal from the superior court's reversal of the Board's compensation order.

In the court below, appellant moved to dismiss appellee's appeal from the Board's decision on the grounds that appellee had not timely complied with the applicable statutory procedures for obtaining review

of a compensation order of the Board.[1] In this appeal appellant reasserts its contention that the superior court was without jurisdiction to entertain appellee's appeal from the Board's decision due to appellee's lack of compliance with the provisions of our compensation act governing review of compensation orders.

Appellant's position is that AS 23.30.125 (a) of our act establishes that a compensation order becomes effective thirty days after it is filed in the office of the Board unless proceedings to suspend it or set it aside are instituted in the superior court in conformity with section 23.30.125(c) of the act.[2] Appellant specifically contends that appellee failed to institute a section 23.-30.125(c) injunction proceeding in the superior court within thirty days of the date on which the compensation order in question was filed in the office of the Board.[3]

The decision denying appellee's application for compensation was dated November 9, and was filed in the office of the Board on November 23, 1964. The record further establishes that the decision was sent by registered mail to appellee-claimant on December 9, 1964 and was received by her on the tenth or eleventh of December. Claimant, on January 7, 1965, then filed a "Notice of Appeal" in the superior court.[4] After denying appellant's motion to dismiss the appeal the superior court permitted appellee to file an amended pleading in the nature of an injunction action against appellant and the Board in conformity with the provisions of AS 23.30.125(c).

Under AS 23.30.110(e) of our act, a compensation order, either rejecting a claim or making an award, is required to be filed in the office of the Board and a copy of such order must be sent by registered mail to the last known addresses of both claimant and employer.[5] This pro-

1. A Board order which denies a claim for compensation is termed a "compensation order" under the Alaska Workmen's Compensation Act. See AS 23.30.110(e). The trial court correctly held that the Board's decision which dismissed appellee's application was a compensation order within AS 23.30.110(e) of our compensation act.

2. AS 23.30.125(a) reads as follows:
   A compensation order becomes effective when filed in the office of the board as provided in § 110 of his chapter and, unless proceedings to suspend it or set it aside are instituted as provided in (c) of this section, it becomes final on the 31st day after it is filed.
   As to the method of commencing proceedings to suspend or set aside compensation orders, AS 23.30.125(c) provided in part that:
   If not in accordance with law, a compensation order may be suspended or set aside, in whole or in part, through injunction proceedings brought by a party in interest against the board in the superior court.

3. In regard to the location of "the office of the board," the Board's own regulations provide that it "will transact business at its office in Juneau every day of the year except Sundays and legal holidays during the hours prescribed by law." 8 Alaska Adm.Code § 426(a).

4. Appellee's "Notice of Appeal" read as follows:
   Comes now the Plaintiff-Applicant, NORMA FISCHER, through her attorneys and appeals the decision of the Workmen's Compensation Board to the Superior Court for the State of Alaska, Third Judicial District. The decision of said Board in case no. 4–04–131 was dated November 9, 1964 and mailed from Juneau, Alaska on December 9, 1964 and notice of same received by Plaintiff-Applicant on December 10 or 11th, 1964.
   * * *
   * * * * *
   Pursuant to AS 44.62.560 the Plaintiff-Applicant designates the entire and complete record of the proceedings, to be prepared by the agency. * * *

5. AS 23.30.110(e) provides:
   The order rejecting the claim or making the award (referred to in this chapter as a compensation order) shall be filed in the office of the board, and a copy of it shall be sent by registered mail to the claimant and to the employer at the last known address of each. Compare 33 U.S.C.A. § 919(e) of the Federal Longshoremen's & Harbor Workers' Compensation Act. Note: AS 23.-30.110(e) and AS 23.30.125(a) and (c) are substantially similar to 33 U.S.C.A. §§ 919(e), 921(a) and (b) of the Longshoremen's & Harbor Workers' Com-

vision of our act makes it mandatory upon the Board, once it has filed its compensation order, to promptly mail a copy of its order to claimant, as well as to claimant's employer.[6] The Board has no discretion to delay mailing copies of the order after it has been filed.[7] Here the record shows that the Board initially delayed filing its November 9, 1964, decision for a period of approximately two weeks. Then, after it had filed its decision on November 23, 1964, it again waited an additional two weeks, until December 9, 1964, before sending a registered letter to appellee, which communication was received by her on the tenth or eleventh of December. We consider it significant that the "copy" of the Board's decision which was sent to appellee on December 9 failed to indicate thereon that the decision had been filed in the office of the Board.[8] Under these circumstances, we hold that the appellee's "Notice of Appeal" filed in the superior court on January 7, 1965, was timely under AS 23.-30.125(a) and (c).[9]

Appellant concedes that if claimant had received no notice at all, or received notice after the time for seeking review had run, then claimant would be entitled to relief as a matter of due process. We are in agreement with those authorities which, in construing similar sections of the Longshoremen's & Harbor Workers' Compensation Act, have concluded that the thirty-day period within which review proceedings must be instituted begins to run from the day the order is filed in the office of the Board and not from the time a copy of the order is received by the claimant.[10] Further, we are in accord with the decision in Gravel Products Corp. v. McManigal[11]

where, in a case arising under the federal compensation act, the court said:

Certainly the plaintiff was an interested party and should have had notice, and, if no such notice was given, the plaintiff should not be denied the opportunity of being heard and having the case disposed of on the merits. If the provisions of the act with regard to notice were not complied with, the restriction imposed by the act, limiting the time within which to seek injunctive relief, cannot be applied, and the court may, under its general equity powers, grant the relief prayed for. Nothing is more firmly established than that a fundamental requisite of the due process guaranteed by the Fifth and the Fourteenth Amendments is the opportunity to be heard.

In our view the factual situation presented by this record approaches the situation discussed in the *Gravel* quote. In the case at bar claimant-appellee never received a copy of the compensation order which had been filed in the Board's office because, as was pointed out earlier, the copy which was sent claimant was devoid of any indication that the order had, as yet, been filed in the office of the Board. All that is necessary under AS 23.30.110(e) and 23.-30.125(a) to start the thirty-day period running is for the Board to promptly send, after filing, a registered copy of its order (a copy being one that reflects the date on which the original thereof was filed in the office of the Board) to claimant and claimant's employer at their respective last known addresses. Here claimant was never given any notice that the Board's order had been filed. In light of this fact and the circumstances that the copy which appellee received on December

pensation Act; see Scott v. Alaska Industrial Bd., 123 F.Supp. 361, 362, 15 Alaska 146 (1954).

6. See Bulczak v. Independent Pier Co., 17 F.Supp. 973, 974 (E.D.Pa.1937).

7. Ibid.

8. The only dates of significance in regard to this communication are the December

9, 1964, postmark and November 9, 1964, decision date.

9. See note 2, supra.

10. See 33 U.S.C.A. § 919(e) and Bulczak v. Independent Pier Co., supra note 6, 17 F. Supp. at 974.

11. 14 F.Supp. 414, 416 (W.D.N.Y.1936).

10 or 11 was dated November 9, 1964, and postmarked December 9, 1964, at Juneau, Alaska, we hold that the lower court did not commit reversible error in concluding that appellee had thirty days from receipt of the Board's decision within which to seek review in the superior court.[12]

■■ Appellant further argues that review of a compensation order is expressly provided for by the injunction procedures of AS 23.30.125(c) and since appellee's "Notice of Appeal"[13] did not comply with AS 23.30.125(c), the superior court was without jurisdiction to review the Board's order. The question of whether the procedure established by AS 23.30.125(c) of our compensation act or the appeal procedures of the Administrative Procedure Act[14] govern review of a compensation order has been the subject of controversy in the superior court and has not as yet been resolved by decision of this court. As a general statement of law, we are in agreement with appellant's contention that where the legislature has established a specific procedure for review of administrative decisions, or orders, such procedure is controlling.[15] We, therefore, hold that in all future cases in which a party

to a proceeding before the Alaska Workmen's Compensation Board seeks review in superior court of a Board order, such review must be initiated by the injunction procedures made obligatory by AS 23.30.-125(c).[16]

■ On the record before us we cannot say that the lower court erred in permitting appellee to amend her original "Notice of Appeal" in order to file an injunction action in conformity with AS 23.-30.125(c). We have already alluded to the uncertainty which existed as to whether the procedures of the Administrative Procedure Act or our Workmen's Compensation Act were to be followed in taking appeals from Board orders. In addition to this factor, it is of significance that in the past this court has held that the scope of review of appeals from Board orders was to be governed by our Administrative Procedure Act.[17] Here the record shows that appellee's counsel was in doubt as to the proper procedure for perfecting an appeal to the superior court, and that the "Notice of Appeal" which was filed on behalf of appellee clearly specified the decision of the Board which was questioned.[18] Under these circumstances, we hold that appellee's "Notice of Appeal" was both timely and

---

12. Implicit in our holding is our opinion that the lower court's determination to allow appellee thirty days from the time of receipt of the Board's decision was reasonable in light of all the circumstances.

13. Supra note 4.

14. AS 44.62.560(a) of the Administrative Procedure Act provides:
    Judicial review by the superior court of a final administrative order may be had by filing a notice of appeal in accordance with the applicable rules of court governing appeals in civil matters. Except as otherwise provided in this section, the notice of appeal shall be filed within 30 days after the last day on which reconsideration can be ordered, and served on each party to the proceeding. The right to appeal is not affected by the failure to seek reconsideration before the agency.

15. Typical of the authorities relied upon by appellant are Price v. Fred Carlson Co., 254 Iowa 296, 117 N.W.2d 439, 440 (1962); Braden v. Transport Ins. Co., 307 S.W.2d 655, 656 (Tex.Civ.App.1957); Gregg v. Mitchell, 99 Ohio App. 350, 133 N.E.2d 645, 647–648 (1955). See also Czaplicki v. Vessel S.S. Hoegh Silvercloud, 223 F.2d 189, 191 (2d Cir. 1955), rev'd on other grounds, 351 U.S. 525, 76 S.Ct. 946, 100 L.Ed. 1387 (1955), where the court held that § 921 of the Longshoremen's & Harbor Workers' Compensation Act "provides the exclusive method of securing judicial relief."

16. Supra note 2.

17. See Beylund v. Matanuska Valley Farmers Co-Op., 391 P.2d 176 (Alaska 1964); Manthey v. Collier, 367 P.2d 884, 887–888 (Alaska 1962).

18. Supra note 4. The "Notice of Appeal" also designated the entire record of the proceedings before the Board.

sufficient procedurally to commence proceedings to obtain review of the Board's compensation order.

Before leaving this point mention should be made of appellants' reliance upon this court's decision in Alaska Mines & Minerals, Inc. v. Alaska Industrial Bd.[19] That case also concerned an appeal to the superior court from a decision of the Board. Central to our disposition of the case was our construction of the Alaska Business Corporation Act[20] which provided that "No domestic or foreign corporation may commence or maintain a suit, action or proceeding in a court in the state without alleging and proving that it has paid its annual corporation tax last due * * *."[21] There the corporation had untruthfully averred that it had paid its taxes at the time it instituted injunctive proceedings in the superior court. In our decision in the Alaska Mines & Minerals, Inc.[22] case, we said:

> The language of the statute [Alaska Business Corporation Act] is unambiguous. It clearly expresses the legislative intent. This being so, it must be enforced as it reads, and should not be modified or extended by judicial construction so as to enable appellant to avoid the consequences of non-compliance with its express terms.

We are of the opinion that in view of the clear expression of legislative intent in the Alaska Business Corporation Act, as opposed to the ambiguity in the case at bar; the policy considerations behind the enactment of the section in question of the Alaska Business Corporation Act; and the factual differences between the cases, reliance upon Alaska Mines & Minerals, Inc. in this case is inappropriate.

As to the other issues raised in this appeal, the record discloses that claimant was the only witness who appeared in person before the Board. In addition to claimant's testimony, the Board received into evidence a prior statement which claimant had made to appellant's agent, as well as medical reports from two physicians.

At the hearing before the Board, appellee testified that she was employed by appellant on December 3, 1963, and at that time she didn't have any disease.[23] Appellee was employed as a secretary-bookkeeper which required her to handle the normal things the position called for, including all "types of office materials, books, papers, filing." As indicated earlier, by Christmas the skin on appellee's hands commenced to erupt culminating in a "weeping" condition which caused her to leave her employment on February 13, 1964. Thereafter, appellee was treated by Dr. Charles L. Lamont (a dermatologist) who, in May 1964, diagnosed appellee's condition as contact dermatitis. Appellee testified that Dr. Lamont had given her skin tests and had narrowed the cause of her condition to Thermofax paper and further stated that "he thought it might be carbon paper and other things also."[24] Up to the time that Dr. Lamont had diagnosed her condition, appellee had assumed that she was sensitive only to "clean" Thermofax paper

19. 354 P.2d 376 (Alaska 1960).

20. Now AS 10.05.003–10.05.828 and AS 10.05.720 in particular.

21. Now AS 10.05.720.

22. Supra note 19, at 379.

23. In a statement given earlier in the year (March 7, 1964), appellee said that when she was employed by appellant, her: * * * hands had been clear, except for one spot on the inside of my left thumb which kept reappearing on and off. * * * I actually was not bothered by the rash from the end of January, 1963 thru December 3, 1963— practically a whole year. The rash reappeared on the fingers of my right hand a few days before Christmas, 1963.

24. At this point in appellee's direct examination before the Board, the following took place:
Q. Other papers that you would have. And were you working with those also..with those items in your employment with Aleutian?
A. Yes, I was.

and that paper which had been exposed or processed would have no detrimental effect upon her.[25]

As to her prior medical history, appellee admitted to contracting a rash while employed by IBM in 1953. At this time a dermatologist conducted a patch test and informed appellee that she was allergic to chemicals in a developing fluid, carbon paper, and Bakelite.[26] Subsequently, in 1958, while employed by Pepsi Cola in Anchorage, appellee again developed a rash which was diagnosed by a local physician as contact dermatitis caused by handling of dirty coins from vending machines.[27] Appellee's medical history also disclosed that while employed by the Alaska State Housing Authority in 1962 she again experienced trouble with the skin on her hands. She was then treated by Dr. Harvey Ansell who diagnosed her condition as "Dermatitis Venenata which could very well have been initiated by the Verifax paper * * *."[28] Appellee further testified that at the time she began work for appellant in December 1963 she had been definitely told to stay away from developing fluids and that she had a slight sensitivity to carbon paper. Appellee also admitted that prior to this time Dr. Ansell had advised her that he believed she was sensitive to Thermofax paper and that she might be sensitive to Verifax paper as well.[29]

On essentially these facts the Board found that appellee's "disease was diagnosed as contact dermatitis probably caused by handling thermofax, verifax, and carbon papers" and that appellee "knew of her probable sensitivity to carbon, verifax, and

25. At the Board hearing appellee was asked: "[H]ad you handled what you call 'used papers'" (i. e. those run through a machine) and she replied:
   Yes, I was forced to and I wasn't aware that this would be more dangerous for me, but lots of things come in these days on Thermofax paper, such as statements, monthly statements, they're done by machine.

26. Dr. Harvey B. Ansell's report of April 1, 1964, states in part:
   According to her history she had had patch tests done in 1953 by a dermatologist in Poughkeepsie. At the time she was said to be sensitive to carbon paper and Bakelite, a plastic.
   Dr. Charles Lamont's report of May 1, 1964, states in part:
   History revealed the patient first had a Contact Dermatitis of the hands in 1953 while handling 'Thermofax' paper in the employ of International Business Machines in Poughkeepsie, N. Y.

27. Note: Dr. Ansell, in his April 1, 1964, report, stated that appellee's history disclosed that after her rash in 1953 "she was clear until 1958 when she had a recurrence while in Anchorage working with carbon."

28. At the hearing appellee testified that Dr. Ansell pinpointed the cause of her condition to "Thermofax Verifax paper." In her statement of March 7, 1964, appellee stated that she was convinced that the cause of her 1962 rash was a reaction in mimeograph machine ink, which she had come in contact with in her employment.

29. When asked if at the time of the commencement of her employment by appellant she had any "suspicion as to any of the possible causes" of her skin condition, appellee stated:
   Yes, I had gone to Dr. Ansell, a skin doctor, previously, and he thought it might be Thermofax, but he didn't give me any tests for it and so I tried to stay away from it, but we assumed it was the clean paper, but the time I went to Dr. Lamont he gave me a patch test with a piece of used Thermofax and a piece of new Thermofax and it was found that I react from the used Thermofax even more so than the clean sheet, and up to that time we had assumed that once the sheet had been used the chemical components would be changed so that it wouldn't bother me.
   In her statement appellee said in regard to the condition which caused her to leave appellant that she was
   of the opinion that this time the rash is a reaction to the desk top where I am presently employed. I am also suspicious of the new type of paper which has appeared on the market and is now used in a lot of offices * * * erasable bond paper. I noticed that my hands became particularly itchy when using this type paper.

thermofax papers." The Board then concluded that although appellee's injury "arose out of and in the course of" her employment her condition was not an accidental injury within the meaning of AS 23.30.265(13)[30] because appellee "had prior knowledge of her sensitivity to carbon paper, thermofax paper and verifax paper." Concurrently, the Board found that:

> Contact dermatitis caused by exposure to carbon, verifax and thermofax papers is not commonly regarded as inherent in and an incident of employment as an office worker.

and therefore concluded that appellee's condition was not "an occupational disease or infection within the meaning of AS 23.30.-265, because the disease is not produced as a natural incident to employment as an office worker." Upon review the superior court determined that the Board was erroneous both in regard to its conclusion that appellee had not sustained an accidental injury and in its conclusion that appellee's condition was not an occupational disease coming within the act's ambit.[31]

█ Our task is to decide whether, in light of the whole record, there is substantial evidence to support the Board's findings that appellee's disability was not compensable.[32] Appellant concedes that if it can be found that appellee-claimant sustained her burden of proof as to either an accidental injury or an occupational disease

"without the benefit of any presumption * * *, then she is entitled to compensation * * *." Since our review of the entire record has convinced us that the Board's findings in regard to occupational disease were not supported by substantial evidence, we deem it unnecessary to discuss questions presented in this appeal relating to whether appellee sustained an accidental injury.

█ In his memorandum opinion the trial judge stated that he could:

> * * * find no evidence at all to sustain the Board's findings of fact that contact dermatitis caused by exposure to carbon and verifax and thermofax papers is not commonly regarded as inherent in and an incident of employment as an officer worker.

The court also wrote that:

> * * * the fact that an employee is predisposed to injury or has a particular existing problem which makes him or her more susceptible to injury or disease does not bar recovery * * *. It seems to me that applicant in this case presents a classic example of the situation which workmen's compensation acts are supposed to cover.

It is true that twice in the course of the superior court's opinion reference was made to certain presumptions created by our Workmen's Compensation Act.[33] In Thornton v. Alaska Workmen's Compensa-

---

30. AS 23.30.265(13) defines "injury" as accidental injury or death arising out of and in the course of employment, and an occupational disease or infection which arises naturally out of the employment or which naturally or unavoidably results from an accidental injury * * *.

31. The superior court, after hearing the matter on the record, filed an opinion which was later adopted as the findings of fact and conclusions of law of the lower court.

32. See Morrison-Knudsen Co. v. Vereen, Opinion No. 345, 414 P.2d 536 (Alaska 1966), and Thornton v. Alaska Workmen's Compensation Bd., 411 P.2d 209, 210 (Alaska 1966), where we said that sub-

stantial evidence under this test is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

33. AS 23.30.120 provides in part that:
In a proceeding for the enforcement of a claim for compensation under this chapter it is presumed, in the absence of substantial evidence to the contrary, that
(1) the claim comes within the provision of this chapter;
* * * * *
(4) the injury was not occasioned by the wilful intention of the injured employee to injure or kill himself or another.

tion Bd., this court said that AS 23.30.120 (1) of our compensation law "creates a presumption that in the absence of substantial evidence to the contrary a claim for compensation comes within the provisions of the statute."[34] Even without reference to any of the act's presumptions, we are of the opinion that the superior court's findings of an occupational disease is supported by substantial evidence in light of the whole record.[35]

Almost every state now covers occupational diseases under its compensation statute.[36] Our own act provides for general coverage in regard to occupational diseases rather than the scheduled type of specific disease statute which has been adopted by some seventeen states.[37] This appeal presents the first occasion on which this court has had to construe the term "occupational disease" as used in our statute.

Both parties to this appeal have in their briefs discussed the Grain Handling Co. v. Sweeney[38] case. In that case Judge Learned Hand wrote:

* * * coverage must be limited to diseases resulting from working condi-

tions peculiar to the calling. In order to recover a workman must be exposed to hazards greater than those involved in ordinary living, and the disease must arise from one of these. * * * But although we must find special dangers in the employment and that the disease arises from them, I can see no reason for limiting the protected class to those who have a normal resistance to such diseases, or for excluding those who are abnormally vulnerable.[39]

■■ The test which we adopted for determining whether a claimant has contracted an "occupational disease * * * which arises naturally out of the employment" approximates that enunciated by Judge Learned Hand.[40] We hold that if a disease is caused by the conditions of employment and these conditions carry with them a risk of incurring the disease greater than that which prevails in employment and living conditions in general, then such disease is an occupational disease within the scope of our act.[41] Compensation is not to be barred because the risk is not generally recognized or because only those unusually susceptible

34. Supra note 31, at 211. What we said in Thornton is also applicable to the other presumptions created by AS 23.-30.120.

35. Where there is substantial evidence to the contrary, the statutory presumption ceases. See John W. McGrath Corp. v. Hughes, 264 F.2d 314, 317 (2d Cir.), cert. denied, 360 U.S. 931, 79 S.Ct. 1451, 3 L.Ed.2d 1545 (1959); Wilson v. General Motors Corp., 298 N.Y. 468, 84 N.E.2d 781 (1949); In re Magna, 258 N.Y. 82, 179 N.E. 266 (1932).

36. 1 Larson, Workmen's Compensation § 41.11, at 593 (1965).

37. See AS 23.30.265(13), supra note 29. Id. at 594.

38. 102 F.2d 464 (2d Cir. 1939).

39. Id. at 465.

40. In reaching this conclusion we decline to adopt, as urged by appellant, the view expressed by Judge Augustus N. Hand in Grain Handling Co. v. Sweeney, supra note 38, at 466. Judge Augustus Hand, in his concurring opinion, wrote:

Even if the disease would not come upon a person free from latent tuberculosis, yet if there are substantial numbers of persons having latent germs of tuberculosis who are likely to develop that disease, they are entitled to the benefit of the statute if their condition is aggravated by conditions peculiar to their occupation. On the other hand, I do not think that a disease would be 'occupational' if it would only develop in sporadic and very rare instances and never among persons in normal condition. To be an 'occupational disease' there must be a likelihood that it will arise among a substantial number of workmen (whether they possess physical infirmities or not) because of the occupation in which they are engaged.

41. See Benware v. Leo F. Benware Creamery, 22 A.D.2d 968, 254 N.Y.S.2d 466, 468 (3d dept. 1964); Griffin v. Griffin & Webster, Inc., 283 A.D. 145, 126 N.Y.S. 2d 672, 675 (3d dept. 1953); Le Lenko v. Wilson H. Lee Co., 128 Conn. 499, 24 A.2d 253 (1942); 1 Larson, op. cit. supra note 36, § 41.62, at 610–11.

or predisposed to a given disease will contract it.[42] Under this definition of occupational disease we hold that there is substantial evidence in the record showing that appellee's contact dermatitis was caused by the conditions of her employment as secretary-bookkeeper for appellant, and that these conditions were peculiar to her employment—that is, the risk of her contracting contact dermatitis was present to a greater degree than is found in employment and living conditions in general.

The judgment of the superior court is affirmed. The case is remanded to the superior court for remand to the Board in accord with the judgment heretofore entered by the superior court.

42. See authorities cited note 40 supra; Ritter v. Hawkeye-Security Ins. Co., 178 Neb. 792, 135 N.W.2d 470 (1965); Simpson Logging Co. v. Department of Labor & Indus., 32 Wash.2d 472, 202 P.2d 448 (1949); 1 Larson, op. cit. supra note 36 § 41.60–41.62, particularly at 610, where Professor Larson writes:

> The majority of jurisdictions, however, have held that individual allergy or weakness is immaterial, if the particular conditions of employment in fact caused the disability.