MAURICE M. CONVERSE, Claimant, v. STATE OF NEW YORK, Defendant.

(Claim No. 27212.)

Court of Claims, June 16, 1945.

*William L. Clay* for claimant.

*Nathaniel L. Goldstein, Attorney-General* (*Harold S. Coyne* of counsel), for defendant.

RYAN, J. Claimant has brought a common-law action against the State of New York to recover for injuries sustained while employed as a garage worker between 1924 and 1941 in a garage operated by the Public Works Department at Pittsford. Upon a motion addressed to claimant's pleading we have already held that the filing by claimant of his claim was timely and that claimant was entitled to an opportunity to establish that the impaired physical condition of which he complained was one not covered by article 4-A of the Workmen's Compensation Law.[1]

Claimant has established that he is suffering from a moderate fibrosis of both lungs (bilateral); that this is a partial permanent disability; that this condition is not tuberculosis, is not silicosis and is not due to inhaling dust from the brake lining machine, nor from the spark plug cleaning machine, both of which he operated, nor due to inhaling carbon monoxide from the exhausts of gasoline engines running in the garage.

Although claimant's present physical condition apparently developed during the period of time, seventeen years and more, that he was employed by the State and although work in garages is listed in group 14 of subdivision 1 of section 3 of the Workmen's Compensation Law as a hazardous employment, it does not appear that claimant is suffering from an occupational disease as such affliction has been enumerated by statute and defined by the courts which in diverse jurisdictions have reached substantial unanimity on the subject. We quote from Judge FINCH: " Thus an occupational disease is one which results from the nature of the employment, and by nature is meant, not those conditions brought about by the failure of the employer to furnish a safe place to work, but conditions to which all employees of a class are subject, and which produce the disease as a natural incident of a particular occupation, and attach to that occupation a hazard which distinguishes it from the usual run of occupations and is in excess of the hazard attending employment in general. Thus compensation is restricted to disease resulting from the ordinary and generally recognized risks incident to a particular employment, and usually from working therein over a somewhat extended period. Such disease is not the equivalent of a disease resulting from the general risks and hazards common to every individual regardless of the employment in which he is engaged.' "[2]

[1] *Converse* v. *State of New York*, 181 Misc. 113.

[2] *Matter of Goldberg* v. *954 Marcy Corp.* (1938), 276 N. Y. 313, 318–319.

Claimant's condition, therefore, is not compensable being in that field wherein the statute still fails to require the employer to provide compensation for injury regardless of fault, and in which the injured person may seek damages by action at law, where there has been fault.[3]

But claimant must establish the fault by a fair preponderance of the evidence. In this, upon the whole record, we find that he has failed. We are satisfied, as we have above stated, that claimant is suffering from a moderate fibrosis of both lungs, a condition which is permanent. But, as above stated, silicosis and the breathing of various dusts and the inhaling of carbon monoxide are eliminated as producing causes of claimant's condition, the requests to find submitted by claimant's attorney and by the Attorney-General being in substantial agreement on this point. The issue on the causative factor is narrowed to the gases and fumes created by welding operations and particularly to such operations wherein manganal rods were used. That this operation gave off manganese dioxide or other gases in sufficient quantities to be harmful to claimant, or that claimant was ever near enough to the welding operations, which were conducted not by him but by others, to have inhaled such gases in such quantities as to impair his health, has not been factually established. Welding was not a continuous process in the Pittsford garage, which was a building containing 243,000 cubic feet of space and in which on the average thirty-five workmen for all operations were employed daily. There were two portable welding machines and, after 1939, a third machine at a fixed position. But there was only one welder employed with the foreman supplying as a second operator at odd rush times. On the average one hundred pounds of manganese rods per year were consumed as compared with sixteen hundred pounds of iron and steel rods, two hundred pounds of bronze rods and five pounds of aluminum rods.

As to ventilation, it appears that there was only one motor driven ventilator in the shop. That was put into the east wall of the building in 1939 at the time that the third welding machine was installed. However, the shop windows were equipped with adjustable ventilators and in the ridge of the roof there were ten eighteen-inch "monitors" or circulatory ventilators propelled by outside air currents. Altogether, we believe and we find that the State of New York provided claimant with a safe place to work.

For the foregoing reasons claimant's claim must be dismissed.

---

[3] *Barrencotto* v. *Cocker Saw Co.* (1934), 266 N. Y. 139, 146.