Bergan, J.
(dissenting). When one reads the language of Judge Finch of almost 30 years ago in Matter of Goldberg v. 954 Marcy Corp. (276 N. Y. 313), it is at once to be seen that the gloss added by this opinion to the definition of “ occupational disease ” is more restrictive than the words of the Workmen’s Compensation Law itself.
The statute does not undertake to define precisely what is meant by the “ occupational ” relation of disease to employment (Workmen’s Compensation Law, § 3, subd. 2). Rather, it lays out a schedule in which there is a description of a list of diseases related to a list of processes. These relationships are grouped as “ occupational diseases ” (§ 3, subd. 2, first par.).
Some of the relationships are obvious. For example, arsenic poisoning is in the column of occupational diseases related to “ Any process involving the use of or direct contact with arsenic ”. But the legislative draftsman foresaw that some diseases actually related to occupations might not easily be put in categories in advance, and a descriptive device was employed which seems intended to leave inclusion of diseases rationally to be deemed “ occupational ” to the case by case judgment of the Workmen’s Compensation Board and to the oversight of judicial review.
*381 This group follows a long list of 28 group categories and includes within the statutory list ‘1 Any and all occupational diseases ’ ’ contracted in 11 any ’ ’ employment listed in subdivision 1 of section 3 of the statute, which, in turn, enumerates a large number of activities.
Bead literally this would seem to mean a disease produced by the work or by the environment of the work. The exclusionary sweep of Goldberg produces á much more limited effect. It is “ restricted”, says the Goldberg opinion (p. 319), to disease resulting from the ordinary and ‘ ‘ generally recognized risks incident to a particular employment ” and “ usually ” incurred over “ a somewhat extended period ”.
Such a “ disease ” is not the “ equivalent of a disease ” which one risks generally from common hazards (276 N. Y. 313, 319). Literally taken, this means that if the kind of disease a man gets due to his work is one which he risks getting elsewhere or if it is not “generally recognized” as a “natural incident of a particular occupation ”, it is not compensable.
The difficulty with a judicial construction of a statute more restrictive than the statute itself is that there normally follows a struggle between the restrictive effect of the judicial decision and the less restrictive scope of the statute. That is exactly what has happened since Goldberg. There has been a tendency to distinguish its language in the actual application of the statute and to follow more directly the way the statute seems on its face to lead.
It must be apparent that there are many diseases which ought to be treated as “ occupational ” within the scope of the statute, which are truly brought on by the work itself or by the environment of the work, but which could be contracted in other ways and which may not “ generally ” be regarded as so special a ‘ ‘ hazard ’ ’ of the particular occupation as to distinguish it from the usual run of occupations.
It would be expected that so restrictive an interpretation of a liberally framed statute as Goldberg imposed would not be followed literally; and it is easy to demonstrate it has not been followed literally.
Pulmonary emphysema and fibrosis are not diseases which are the natural incidents of the work of a butcher. They do not attach as a special hazard to that occupation, distinguishing *382 butchering, in this respect, “ from the usual run of occupations ”. Still, the court held in Matter of Roettinger v. Great Atlantic & Pacific Tea Co. (13 N Y 2d 1102) that the butcher who went in and out of refrigerators had thereby contracted a pulmonary condition which ultimately led to emphysema and fibrosis, and these were diseases appropriate to butchering. It is impossible, logically, to reconcile this decision with the literal language of Goldberg.
The “ recognizable link ” between the exposure to low temperatures and the disease, upon which Judge Scileppi relies, is only part of the answer to the problem. If all we needed was a “ recognizable link ” between exposure and disease, there would be no division in the court over the cases now before us because the “recognizable link ” is certainly shown in both cases.
A recent comment on Roettinger is that the “ recognizable link” between the job and the disease “seems no more nor no less than ordinary causal relationship ” and the decision “ stands as a valid and emphatic extension of the limits of coverage at least in cases involving original contraction of the disease in employment.”*
The plain fact is that Roettinger cut through the Goldberg requirement that an occupational disease could only be one which was “ a natural incident” to the occupation itself. No one could pretend that emphysema or fibrosis were i 1 natural incidents ” of working as a butcher. All that could be said was that in Roettinger there was a relationship between the environment of the work and the ultimate occurrence of these diseases.
Nor is Roettmger the only decision which breaks through the restrictive gloss on the statute. There would be equal difficulty in fitting the Goldberg criteria literally to the decision in Matter of Mason v. Y. W. C. A. of City of N. Y. (271 App. Div. 1042, mot. for lv. to app. den. 297 N. Y. 1037). There, a telephone operator contracted tuberculosis from a phone mouthpiece which *383 had been used by a fellow employee who had tuberculosis. This, surely, was not a “natural incident” of a “particular occupation”. It was, on the contrary, a highly fortuitous event in the employment. But the contraction of tuberculosis there could be found, and was found, an employment-associated hazard. Very similar in its operational effect is Matter of Hovancik v. General Aniline Film (8 A D 2d 171), where an employee using a pipette to draw up fluid for testing dyes contracted tuberculosis. Another employee who had used the pipette had tuberculosis. A finding this was an occupational disease was sustained.
In 1965 this court sustained an award based on Raynaud’s disease, where the claimant working in a dairy plant had his hands exposed to cold water and cold milk, against the argument pursuant to Goldberg that the disease was not characteristic or peculiar to this occupation and, therefore, not an “ occupational disease ” (Matter of Benware v. Benware Creamery, 16 N Y 2d 966).
In Matter of Harman v. Republic Aviation Corp. (298 N. Y. 285), claimant was found by the board to have contracted tuberculosis from a fellow employee with whom he was “in fairly close contact” (p. 287). The benches at which they worked were a few feet apart. The room in which they worked, however, was a “clean and well-ventilated ” shop. The court reversed the award and dismissed the claim on the ground that tuberculosis thus contracted was not an occupational disease within the terms of the statute. The physical environment as established by the employer itself seemed to have played no effective role in the transmission of the disease.
In both the cases before us, therefore, the awards made by the board ought to be sustained, since they are based on a showing of a recognizable link, confirmed by medical opinion, between the occupationally created environment and the disease in an occupation listed in the statute as appropriate for relief for “ any occupational disease ”.
In Raider, claimant worked in close contact for a number of months — from January to November, 1960—with a fellow employee who has been shown to have had tuberculosis in an active and communicable stage. They were truckmen; the proof *384 is the work threw them together in a closely confined and poorly ventilated cab. Claimant, at the end of this period, was found to have contracted tuberculosis.
There is adequate medical opinion attributing claimant’s infection to this employment contact. Tfie Workmen’s Compensation Board made an award based on its finding that claimant’s disease was occupational. The board found “ that claimant’s hazardous exposure and contraction of tuberculosis were due to the nature of the employment, and that occupational disease is established ’ ’.
The physical condition of close confinement, with poor ventilation in the truck cab, the situs of the employment, found by the board to have been an effective condition for transmission of the disease, comes logically within the area in which awards for occupational disease have been sustained.
The Snir case is governed by similar principles. It is demonstrated medically and found by the board that the work environment is linked to the disease. The court seems to be making a retrograde step in re-establishing all the literal difficulties in interpreting the occupational disease statute created by Goldberg, which a series of decisions liberally oriented to the language and purpose of the statute seemed to have been able to redress.
In Paider, the order should be reversed; in Snir, the order should be affirmed.
In Matter of Paider: Order affirmed, without costs. Opinion by Judge Scileppi. All concur, Judge Burke concurring in result upon the opinion at the Appellate Division, except Judge Bergan, who dissents and votes to reverse in an opinion in which Judge Keating concurs.
In Matter of Snir: Order reversed and claim dismissed, without costs. Opinion by Judge Scileppi. All concur except Judge Bergan, who dissents and votes to affirm in an opinion in which Judge Keating concurs and Judge Burke, .who dissents and votes to affirm upon the opinion at the Appellate Division.

 Barker, Robert A., New York Workmen’s Compensation: Occupational Disease, 31 Albany L. Rev. 15, 21. The analysis of Boettmger is developed largely on the exposition of the opinion of Justice Gibson at the Appellate Division.