In the Matter of the Claim of CHRISTINA CORNWELL, Respondent, v ROCKWELL INTERNATIONAL et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, December 8, 1977

### APPEARANCES OF COUNSEL

*Ainsworth, Sullivan, Tracy & Knauf (John E. Knauf* of counsel), for appellants.

*Oot & Fallon* for Christina Cornwell, respondent.

*Louis J. Lefkowitz, Attorney-General (Harry Rackow* and *Daniel Polansky* of counsel), for Workmen's Compensation Board, respondent.

### OPINION OF THE COURT

MIKOLL, J.

Claimant commenced work as a packer for Rockwell International, manufacturer of portable electric hand tools, in October, 1972. Her job was to pack tools weighing from 4 to 25 pounds into boxes and to stack the boxes on a skid. In stapling

the boxes, she used an air pressure stapling gun weighing approximately five pounds. In November, 1972 claimant began having difficulty with her right arm, experiencing tingling, numbness and pain which continued until March, 1973, when her arm "went completely numb" while at work.

The claimant's medical experts found that she suffered from "a thoracic outlet syndrome" described in medical testimony as "a narrowing between the collar bone and the first rib through which passes the subclavicular artery and the subclavian vein and brachial plexus". It was also the opinion of one of claimant's medical experts that she had a predisposition toward this problem because of her physical features.

A majority of the board panel found that claimant's disabling condition was an occupational disease. The facts justify the board's finding that the disability was an occupational disease. Claimant's symptons developed approximately one month after she began her employment and increased until her arm became completely numb in March, 1973, some five months later. In *Matter of Greer v Green Is. Contr. Corp.* (54 AD2d 996) claimant had worked as a highway construction roller operator for approximately eight months before his back began to bother him. We affirmed the board's finding that his back condition was a compensable disability related to his occupation.

Claimant here was engaged in a strenuous activity. The nature of her work certainly activated her dormant condition at a faster pace than if she had been engaged in less demanding occupational duties. The time that it takes for symptoms to develop is dependent upon the employment conditions and must be considered in the light of those work conditions.

The decisions should be affirmed, with costs to the Workmen's Compensation Board against the employer and its insurance carrier.

HERLIHY, J. (dissenting). We are dissenting primarily because we believe there must be circumstances where a physical defect as distinguished from a disease does not become an occupational disease in a period of approximately 30 days. In our opinion, if this were not so, then there is no limitation on what the board can find to constitute an occupational disease where the "disease" is simply a mechanical malfunction which becomes symptomatic almost simultaneously with employ-

ment. The present case does not raise any issue as to accidental injury.

The facts are set forth in the majority opinion, along with the necessary medical description of "thoracic outlet syndrome". In addition, it should be pointed out that the claimant on March 21, 1974 was operated on for the purpose of a resection of the first right rib and on June 6, 1974 for a resection of the first left rib. It should be noted that she had no complaints concerning her left side during the period of her employment. In late 1975 claimant was diagnosed as suffering from a paralyzed left diaphragm and the board found all of these conditions were causally related to her employment.

Following a hearing, the Referee determined, *inter alia,* that the claimant's underlying condition of a thoracic outlet syndrome was congenital in nature and that the employment at best merely aggravated this condition which was a pre-existing nonindustrial disease or abnormality. The board reversed the Referee's finding.

It is well established that not all illness causally related to a claimant's employment is an occupational disease within the meaning of the Workmen's Compensation Law *(Matter of Paider v Park East Movers,* 19 NY2d 373, 380).

In the recent case of *Matter of Perez v Pearl-Wick Corp.* (56 AD2d 239, 241) this court noted that where a pre-existing condition of a claimant's body is involved, the question to be determined was whether or not the employment nevertheless creates a disability not previously present. That test is satisfied in this case; however, unlike *Perez* and the cases of *Matter of Strouse v Village of Endicott* (50 AD2d 635) and *Matter of Lopez v Hercules Corrugated Box Corp.* (50 AD2d 1048) relied upon in the *Perez* decision, this claimant became symptomatic about *one month* after starting work. She commenced work in October, 1972 and began having difficulties with her right arm in November, 1972. While the work effort of the claimant may well have resulted in repeated trauma to her physical defects, such a short period of time does not have any substantial "occupational" tie.

Upon the present record the disability could have resulted from claimant following any occupation which substantially required the use of her arms in an extended posture. The feature of being a packer in a plant might be distinctive, but it does not meet the ordinary expectation of a disease being

caused "from working therein [a particular employment] over a somewhat extended period." *(Matter of Goldberg v 954 Marcy Corp.,* 276 NY 313, 319; see, also, *Matter of Paider v Park East Movers, supra,* p 377.)* While the disabling change in the present claimant's body may well have been caused by the employment, the condition simply does not meet the requirement of an occupational disease. There is no "disease" in the ordinary sense of the term and the body change was not brought about by any extended exposure to the employment so as to be "occupational".

If claimant had ceased work in November, one month after she commenced work—when she first started "having difficulties"—it is inconceivable that a finding could have been made of occupational disease within the meaning of the Workmen's Compensation Law. This being so, the difficulties complained of could not constitute an aggravation.

The doctor in his testimony stated: "Consequently, I feel this should be considered as a compensable condition aggravated by her work". The medical testimony in this record is equivocal, speculative and without any solid foundation for finding that the physical defect from which she suffered was itself an occupational disease.

If it should be assumed or found that the condition was an occupational disease, then there is a further aspect of the case which is totally unsupported in this record. It stands undisputed that the condition which she complained of while working concerned her right arm and she ceased her employment due to this complaint. The medical record is far from clear as to the reason or necessity for the operation on the left side several months thereafter. There is no sound medical judgment as to why the paralysis, which developed two years subsequent, was in any way related to the first operation on the right side. In fact, the doctor's testimony was that he could only surmise that this was related to the occupational disease. His testimony is premised entirely upon conclusions without giving any medical basis for arriving at the same.

While we do not necessarily disagree with the board's finding "that claimant has a continuing causally related disability", it is our opinion, as a matter of law, that the facts in this case would not support a finding of occupational disease. Certainly, as there is no credible evidence of symptoms on the left side, it could not be concluded that "claimant's work activity caused a severe aggravation of an asymptomatic

underlying condition which became symptomatic" *(Matter of Lopez v Hercules Corrugated Box Corp.,* 50 AD2d 1048, *supra)* which would be required to support a finding of occupational disease. This record consists of pure speculation and surmise, and cannot support the finding that the necessity of an operation on the left side and the resulting paralysis were causally related to her employment.

The decisions of the Workmen's Compensation Board should be reversed.

GREENBLOTT, J. P., and MAIN, J., concur with MIKOLL, J.; KANE and HERLIHY, JJ., dissent and vote to reverse in an opinion by HERLIHY, J.

Decisions affirmed, with costs to the Workmen's Compensation Board against the employer and its insurance carrier.