Matter of Yonkosky v Town of Hamburg (2018 NY Slip Op 00586)





Matter of Yonkosky v Town of Hamburg


2018 NY Slip Op 00586


Decided on February 1, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 1, 2018

524849

[*1]In the Matter of the Claim of NICHOLAS J. YONKOSKY, Respondent,
v
TOWN OF HAMBURG et al., Appellants. WORKERS' COMPENSATION BOARD, Respondent.

Calendar Date: December 14, 2017

Before: Garry, P.J., Lynch, Clark, Aarons and Pritzker, JJ.


Law Office of Melissa A. Day, Amherst (James B. Cousins of counsel), for appellants.
Connors & Ferris, LLP, Cheektowaga (Brian J. Uhrmacher of counsel), for Nicholas J. Yonkosky, respondent.
Eric T. Schneiderman, Attorney General, New York City (Marjorie S. Leff of counsel), for Workers' Compensation Board, respondent.


Lynch, J.

MEMORANDUM AND ORDER
Appeal from a decision of the Workers' Compensation Board, filed June 17, 2016, which ruled that claimant sustained a causally-related occupational disease and awarded workers' compensation benefits.
Claimant, a college student, was employed as a seasonal
laborer for a municipal highway department for approximately three months during the summer of 2014. His duties included working with crews clearing roadside brush and filling potholes with asphalt. In July 2014, he began experiencing problems with his right shoulder and obtained treatment from a chiropractor. On the chiropractor's advice, he took a week off from work. His symptoms resolved and he resumed working until the end of the summer, when he returned to college. Claimant's symptoms resurfaced in December 2014 when he was playing basketball, at which time he went to an orthopedic specialist. Diagnostic images were taken of claimant's right shoulder and he was diagnosed with, among other things, a torn right rotator cuff. In January 2015, claimant filed a claim for workers' compensation benefits indicating that he injured his right shoulder on July 24, 2014 while tipping a wheelbarrow to unload asphalt into a pothole. [*2]The self-insured employer controverted the claim and, following various hearings, a Workers' Compensation Law Judge established the claim for an occupational disease of the right shoulder and awarded claimant benefits. The Workers' Compensation Board affirmed this decision, and the self-insured employer and its third-party administrator (hereinafter collectively referred to as the employer) now appeal.
The employer contends that substantial evidence does not support the Board's establishment of the claim as an occupational disease. Rather, it maintains that the shoulder injury should be classified as an accidental injury and, as such, the claim is untimely under Workers' Compensation Law § 18. An occupational disease is statutorily defined as "a disease resulting from the nature of the employment and contracted therein" (Workers' Compensation Law § 2 [15]; see Workers' Compensation Law § 3 [2]; Matter of Jones v Consolidated Edison Co. of N.Y., Inc., 130 AD3d 1106, 1106 [2015]; Matter of Ball v New Era Cap Co., Inc., 21 AD3d 618, 619 [2005]). Significantly, in order to establish an occupational disease, a claimant must demonstrate a "recognizable link" between his or her affliction and a "distinctive feature" of his or her employment (Matter of Ball v New Era Cap Co., Inc., 21 AD3d at 619 [internal quotation marks and citation omitted]; see Matter of Aldrich v St. Joseph's Hosp., 305 AD2d 908, 909 [2003]).
Claimant testified that his work entailed clearing brush, as well as filling potholes. While not sure of exactly when his shoulder injury occurred, he thought it happened around July 24, 2014, when he experienced a twinge in his right shoulder while emptying a wheelbarrow full of asphalt — a factual event that the employer does not contest. Claimant stated that on a typical shift when he worked with the blacktop crew, he loaded and unloaded the wheelbarrow containing asphalt approximately 20 times. He was assigned to the blacktop crew less than a dozen times. Claimant's supervisor testified that claimant worked with the crew that cleared brush most of the time, but did not elaborate upon the specific duties involved.
Claimant's chiropractor testified that he began treating claimant for problems with his cervical and thoracic spine in July 2014. He did not examine claimant's right shoulder or express an opinion as to the cause of claimant's shoulder injury, but took note that claimant complained of pain in his right shoulder. Claimant's treating orthopedist testified that a shoulder injury involving a rotator cuff tear was unusual for a young man such as claimant, who was in his twenties. His testimony regarding the manner in which claimant sustained this injury was equivocal. He stated that a rotator cuff tear could be caused by repetitive overhead activities or by a single traumatic event, but did not identify which one was responsible for claimant's injury. He further stated that he could not ascertain whether claimant's injury was caused by his work activities, such as pushing a heavy wheelbarrow, or by his sports activities, such as playing volleyball and basketball. He surmised that claimant's injury was probably due to a combination of both, but admitted that he could not state for certain that it was work-related.
Even accepting, as did the Board, that claimant injured his shoulder unloading the wheelbarrow, we agree with the employer that the injury should be classified as accidental and not as an occupational disease. The proof failed to demonstrate that claimant's shoulder injury was attributable to repetitive movements associated with moving heavy wheelbarrow loads of asphalt or performing other manual duties during his short period of employment as a laborer with the highway department. To the contrary, claimant testified that the onset of shoulder pain occurred during a definitive event at work when he was emptying a wheelbarrow filled with asphalt. Consequently, we find that there is a lack of substantial evidence evincing a recognizable link between claimant's shoulder injury and a distinctive feature of his job as is necessary to establish his claim for an occupational disease (see Matter of Bates v Marine [*3]Midland Bank, 256 AD2d 948, 949 [1998]; see also Matter of Clanton v Salon Visentin, Inc., 37 AD3d 968, 968 [2007]; Matter of Ferraina v Ontario Honda, 32 AD3d 643, 644 [2006]; Matter of Benjamin v International Bus. Machs., 293 AD2d 889, 890-891 [2002]). Insofar as the Board concluded otherwise, its decision must be reversed.
Garry, P.J., Clark and Aarons, JJ., concur.




Pritzker, J. (dissenting).


I respectfully dissent. "'An occupational disease is a condition which derives from the very nature of the employment and not from an environmental condition specific to the place of work'" (Matter of Currier Manpower, Inc., of N.Y., 280 AD2d 790, 791 [2001], quoting Matter of Bates v Marine Midland Bank, 256 AD2d 948, 948 [1998]; see Workers' Compensation Law § 2 [15]). To demonstrate the existence thereof, "the claimant must establish a recognizable link between his or her condition and a distinctive feature of his or her employment" (Matter of Simpson v New York City Tr. Auth., 151 AD3d 1160, 1161 [2017] [internal quotation marks and citations omitted]; see Matter of Bryant v City of New York, 252 AD2d 777, 777 [1998], lv denied 92 NY2d 813 [1998]).
Claimant's testimony, which the Workers' Compensation Board was free to credit (see Matter of Simpson v New York City Tr. Auth., 151 AD3d at 1161), established that he felt a "twinge" in his shoulder when he was lifting a heavy wheelbarrow filled with asphalt while working for the municipal highway department. The testimony of claimant's treating orthopedist, while somewhat equivocal, indicated that the injury was probably caused by a combination of factors, including claimant's operation of the wheelbarrow during the course of his employment. Although the majority concludes that the proof failed to demonstrate that claimant's injury was attributable to repetitive movements associated with moving the wheelbarrow, the prolonged nature of the employment activity — while often pertinent to demonstrating a "recognizable link" between the injury and the nature of the employment — is not always relevant. Indeed, the Court of Appeals has explained that "compensation is restricted to disease resulting from the ordinary and generally recognized risks incident to a particular employment, and usually from working therein over a somewhat extended period" (Matter of Paider v Park E. Movers, 19 NY2d 373, 377 [1967] [emphasis added]). The duration of the employment activity may be particularly relevant where the injury is likely to arise only from the cumulative effect of repeated actions over an extended period. In such cases, the gradual deterioration of the employee's condition may be necessary to establish that the injury was the "natural and unavoidable" result of the employment (Matter of Goldberg v 954 Marcy Corp., 276 NY 313, 319 [1938] [internal quotation marks and citation omitted]). However, the question of whether an injury is an occupational disease must take into account the actual nature of the work performed by the claimant (see generally Matter of Cornwell v Rockwell Intern., 59 AD2d 475, 476 [1977], affd 46 NY2d 762 [1978]).
Where, as here, the employment activity is strenuous, the duration of the employment activity may not be necessary to establish a nexus between the injury and the nature of the employment. Occupational disease is not defined by a repetitive activity over a prolonged period of time, but it is often supported by such proof. Notably, there is no such requirement in the statutory definition (see Workers' Compensation Law § 2 [15]), and one should not be imposed in a restrictive fashion given the remedial nature of the Workers' Compensation Law (see Matter of Busch v Austin Co., 37 AD2d 648, 649 [1971]; see generally Matter of Scanlan v Buffalo Pub. School Sys., 90 NY2d 662, 676 [1997]). Importing what is a case-specific proof issue into the [*4]very definition of occupational disease and making it a requirement for compensation could, like here, bar an otherwise timely claim (compare Workers' Compensation Law § 18, with Workers' Compensation Law § 45). In my view, an injury that is inherent in the nature and modality of the employment constitutes an occupational disease — regardless of whether it was produced over an extended period of time from repetitive actions or whether its onset was acute — whereas an injury arising out of an accident that bears no connection to a distinctive feature of the employment is not.[FN1]
Moreover, even under the majority's view, substantial evidence demonstrated that the rotator cuff tear was attributable to repetitive movements associated with lifting and moving the wheelbarrow loads of asphalt. While claimant was indisputably assigned to the blacktop crew less than 12 times, he loaded and unloaded the wheelbarrow approximately 20 times per shift. His testimony established that a given shift usually required moving a two-ton truckload of asphalt, meaning that each wheelbarrow load would weigh approximately 200 pounds. While claimant's testimony was not crystal clear, it appears that, at times, he would even unload multiple truckloads on a given shift. The recognizable link between the injury and a distinctive part of the employment activity was recognized and established through the orthopedist's testimony that a rotator cuff tear can occur from "repetitive overuse" of the shoulder and "excessive lifting of heavy objects in a repetitive fashion." Notably, the orthopedist also testified that a torn rotator cuff is unusual for someone of claimant's age, further linking the injury to the specific employment activity. Deferring to the Board's credibility assessments in favor of claimant and the orthopedist, I believe that substantial evidence exists to support the determination that there was a recognizable link between the rotator cuff tear and claimant's employment activity of lifting a heavy wheelbarrow and, therefore, his injury constitutes an occupational disease (see Matter of Jones v Consolidated Edison Co. of N.Y., Inc., 130 AD3d 1106, 1107 [2015]; Matter of Storm v Phillips Light. Co., 117 AD3d 1312, 1313-1314 [2014]; Matter of Camby v System Frgt., Inc., 105 AD3d 1237, 1238 [2013]; Matter of Ball v New Era Cap Co., Inc., 21 AD3d 618, 619-620 [2005]; Matter of Baker v Weyerhaeuser, 19 AD3d 850, 850-851 [2005]; Matter of Currier Manpower, Inc., of N.Y., 280 AD2d at 791). Accordingly, notice was due within two years "after the disablement or after . . . claimant knew or should have known that the disease [was] due to the nature of the employment, whichever is the later date" (Workers' Compensation Law § 45), and the claim is not governed by the 30-day notice period of Workers' Compensation Law § 18 (see Matter of Currier Manpower, Inc., of N.Y., 280 AD2d at 791-792).
ORDERED that the decision is reversed, without costs, and matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision.



Footnotes

Footnote 1: For example, had claimant merely tripped over the wheelbarrow during the course of his work, the resulting injury would clearly not be an occupational disease because there is no recognizable link between his injury and a distinctive feature of his employment. Here, however, the injury is inherent to an activity that claimant was required to perform (heavy lifting) as part of his employment responsibilities.